UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MICHELLE LOSCALZO,

        **Plaintiff,**

  - against -

NEW ROC MOTORCYCLES, LLC
        **Defendant.**

-----------------------------------------------------------------x

Case No.: 07 CIV 3046 (CLB)

DEFENDANT'S RULE 56.1 STATEMENT

      Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, the Civil Rules of the United States District Court for the Southern District of New York and this Court's motion rules, the following is Defendant's statement of material facts about which it contends there are no issues to be tried.[1]

    1.    NewRoc Motorcycles, LLC ("NewRoc"), is a Harley Davidson is a motorcycle dealership located in New Rochelle, New York. (Meskunas Aff. ¶ 3)

    2.    NewRoc began operations in November, 2005. (Meskunas Aff. ¶ 3)

    3.    NewRoc sells both new and used Harley Davidson motorcycles, as well as other Harley Davidson apparel and merchandise. (Meskunas Aff. ¶ 4)

    4.    Plaintiff Michelle Loscalzo ("Plaintiff"), commenced employment with NewRoc on November 16, 2005, as a part time Greeter. (Meskunas Aff. ¶ 5)

---

[1] Each assertion will include a reference to the relevant source, when possible. Relevant portions Plaintiff's deposition transcript conducted on November 9, 2007, and December 3, 2007, are submitted herewith in a bound compendium. References to transcript are denoted as ("Pl. Tr. at __"). References to the Affidavit of Patricia Massa, sworn to December 7, 2007, are denoted as "Massa Aff.". References to the Affidavit of John Meskunas, sworn to December 7, 2007 are denoted as "Meskunas Aff."

1

5.  As a part time Greeter, Plaintiff was scheduled to work primarily on the weekends and was charged with the responsibility of greeting customers as they entered the dealership. (Massa Aff. ¶ 5)

6.  At the time that she commenced employment with NewRoc, Plaintiff was provided with a copy of NewRoc's Employee Handbook, which contains NewRoc's Policy against Discrimination and Sexual Harassment. (Massa Aff. ¶ 5)

7.  Plaintiff remained in the Greeter position until August 21, 2006, when she requested and was offered a position as a Motorcycle Sales Associate. (Massa Aff. ¶ 6)

8.  As a Sales Associate, Plaintiff was required to provide prompt, dependable, high quality, vehicle sales to customers by using current proactive feature benefit sales techniques. (Massa Aff. ¶ 7)

9.  Plaintiff's responsibilities as a Sales Associate included, but were not limited to: (1) attaining new and used sales quotas as agreed upon with the Sales Manager; (2) presenting the features of all products to customers along with their benefits; (3) maintaining the computerized inventory control system along with net profit objectives which eliminate the possibility of lower than anticipated profits; (3) following procedures to ensure timely and proper completion of all paperwork; (4) following procedures for quick and efficient handling of warranty items; (5) using a common and consistent quotation methodology for vehicle sales, trade-ins and purchases; (6) conducting a road test and pre-delivery inspection prior to delivery to the costumer; (7) ensuring that the showroom floor and motorcycles were clean and suitable for display; and (8) maintaining profit margin objectives for all vehicle sales. (Massa Aff. ¶ 7)

10. Plaintiff's salary structure as a Sales Associate was $10.00 per hour plus commissions earned on the sale of motorcycles. (Massa Aff. ¶ 8)

11. Plaintiff's direct supervisor was Wayne Sforza, NewRoc's Sales Manager. (Massa Aff. ¶ 9)

12. Plaintiff was also supervised indirectly by John Meskunas, President and Owner of NewRoc. (Massa Aff. ¶ 10)

13. Plaintiff lacked the skills and knowledge necessary to sell Harley Davidson Motorcycles. (Massa Aff. ¶ 11)

14. Plaintiff refused to follow Mr. Sforza's instructions and often went out of her way to antagonize him. (Massa Aff. ¶ 11)

15. Over the five month period Plaintiff was employed by NewRoc as a Sales Associate, she reported to work late on at least 49 different workdays. (Massa Aff. ¶ 13)

16. Plaintiff also failed to complete the training courses available to her online through the Harley Davidson online training cite. (Massa Aff. ¶ 14)

17. Plaintiff was registered for the following training courses: C.U.S.T.O.M Motorcycle Sales, Selling Skills I, It's Your Loss, VRSC Sales and Competitive, Knowledge, Understanding the Customer – Unit 1, The Buell Opportunity, Selling Skills II, Make Mine Genuine, Selling Skills for the Sportster Family, VRSC Sales and Competitive Knowledge, 2007 Model Sales Walk-Around, Getting Yourself Read – Unit 2, Customer Focused Selling 1 & 2, Customer Focused Selling 3 & 4, Customer Focused Selling – 5 & 6, Customers for Life – 1 & 2, Customers for Life – 3, 4, & 5, Introduction to the V-Rod. (Massa Aff. ¶ 14)

18. Plaintiff only successfully completed 4 of the training courses. (Massa Aff. ¶ 14)

19. Plaintiff received numerous counselings and warnings about her job performance while employed by NewRoc as a Sales Associate. (Massa Aff. ¶ 15)

20. Within a five month period, Plaintiff received seven warnings about her job performance. (Massa Aff. ¶ 15)

21. On September 3, 2006, Plaintiff received a written warning from Mr. Sforza for lateness and attendance. (Massa Aff. ¶ 15)

22. On September 21, 2006, Plaintiff received a second written warning from Mr. Sforza for insubordination. (Massa Aff. ¶ 16)

23. On December 20, 2006, Plaintiff received another written warning from Mr. Sforza, for failure to adhere to Sales Department Policies and Procedure. (Massa Aff. ¶ 17)

24. On January 5, 2007, Plaintiff received an additional warning for failure to properly process deal paperwork and a customer deposit. (Massa Aff. ¶ 18)

25. On January 22, 2007, Mr. Sforza counseled Plaintiff regarding her failure to follow proper procedure. (Massa Aff. ¶ 19)

26. On January 27, 2007, Plaintiff received a verbal warning from Mr. Meskunas, for failing to disclose information relevant to a motorcycle trade-in. (Massa Aff. ¶ 20)

27. On February 4, 2007, Plaintiff received a verbal warning from Mr. Meskunas, for dishonesty in connection with a motorcycle sale. (Massa Aff. ¶ 21)

28. On February 7, 2007, as a result of Plaintiff's poor job performance and dishonesty, Mr. Meskunas decided to terminate Plaintiff's employment with NewRoc. (Massa Aff. ¶ 22)

29. As President and Owner of NewRoc, Mr. Meskunas had the ultimate authority to terminate Plaintiff's employment. (Meskunas Tr. ¶ 121).

30. On February 8, 2007, Mr. Meskunas and Ms. Massa met with Plaintiff and advised her that her employment was being terminated. (Massa Aff. ¶ 23)

31. During the February 8, 2007 meeting Plaintiff acknowledged that her termination was more than half of her fault. (Massa Aff. ¶ 23)

32. Plaintiff met with Ms. Massa to discuss her terminal benefits on February 8, 2007. (Massa Aff. ¶ 24)

33. Ms. Massa confirmed with Plaintiff that she was eligible for COBRA benefits and provided her with the necessary paperwork. (Massa Aff. ¶ 24)

34. On February 20, 2007, Mr. Meskunas received a letter from an attorney on behalf of Plaintiff advising Mr. Meskunas that Plaintiff was asserting a claim against him for sexual harassment. (Massa Aff. ¶ 25)

35. At no time during her 15 months of employment with NewRoc did Plaintiff ever complain to anybody about sexual harassment. (Massa Aff. ¶ 25)

36. Plaintiff often sought assistance and guidance from Mr. Meskunas to resolve any disagreement she had with Mr. Sforza. (Massa Aff. ¶ 25)

37. Mr. Meskunas repeatedly assisted Plaintiff with any problems or issues she had at work. (Massa Aff. ¶ 25)

38. On February 23, 2007, Plaintiff contacted Ms. Massa and advised her for the first time about her claims against NewRoc. (Massa Aff. ¶ 26)

39. Ms. Massa told Plaintiff she was shocked and surprised by her allegations. (Massa Aff. ¶ 26)

40. Plaintiff sent Ms. Massa an email apologizing for not having said anything sooner to Ms. Massa about her claims against NewRoc. (Massa Aff. ¶ 27)

41. Plaintiff again contacted Ms. Massa by electronic mail on February 27, 2007, and requested that that the COBRA forms be emailed to her. (Massa Aff. ¶ 28)

42. Ms. Massa provided Plaintiff with the appropriate COBRA forms. (Massa Aff. ¶ 28)

43. On April 14, 2007, Ms. Massa received Plaintiff's completed COBRA forms along with an undated check, apparently for the continuation of her medical insurance. (Massa Aff. ¶ 29)

44. Ms. Massa was required to mail the check for COBRA coverage back to Plaintiff because she had failed to date the check. (Massa Aff. ¶ 29)

45. In April, 2007, Ms. Massa received Plaintiff's dated check and submitted it to the Bank of American for deposit. (Massa Aff. ¶ 29)

46. Based upon the payment received from Plaintiff, Plaintiff's health insurance benefits were continued under COBRA through April 30, 2007. (Massa Aff. ¶ 29)

47. On April 16, 2007, Plaintiff commenced this action against NewRoc alleging that she had been sexually harassed during her employment with NewRoc. (Massa Aff. ¶ 30)

48. In order to continue her health insurance benefits past April 31, 2007, Plaintiff was required to submit a COBRA check by May 1, 2007. (Massa Aff. ¶ 31)

49. NewRoc did not receive any check from Plaintiff for continuation of her health insurance under COBRA by May 1, 2007. (Massa Aff. ¶ 31)

50. Plaintiff had a thirty (30) day grace period to submit payment for COBRA coverage. (Massa Aff. ¶ 32)

51. By June 1, 2007, NewRoc still had not received Plaintiff's payment for her COBRA benefits. (Massa Aff. ¶ 32)

52. Plaintiff's health insurance coverage was discontinued as of May 1, 2007, as a result of Plaintiff's nonpayment. (Massa Aff. ¶ 32)

53.     On June 6, 2007, NewRoc received an unstamped envelope from Plaintiff, postmarked June 4, 2007.  (Massa Aff. ¶ 32)

54.     NewRoc did not open the envelope, nor deposit any additional checks from Plaintiff.  (Massa Aff. ¶ 32)

55.     On July 16, 2007, NewRoc learned for the first time that the insurance company had erroneously advised Plaintiff that her health insurance coverage had ended as of February 28, 2007.  (Massa Aff. ¶ 33)

56.     NewRoc corrected the insurance company's error.  (Massa Aff. ¶ 33)

57.     On September 9, 2007, NewRoc received notification from the health insurance company that the error had been corrected.  (Massa Aff. ¶ 33)

58.     On August 21, 2007, Plaintiff filed her Amended Complaint alleging that her employment had been terminated allegedly in retaliation for Plaintiff's complaints that was sexually harassed during her employment with NewRoc. (Massa Aff. ¶ 34)

59.     Plaintiff's Amended Complaint also asserted a claim that her COBRA coverage had been terminated in retaliation for the filing of an action against NewRoc. (Massa Aff. ¶ 34)

60.     Plaintiff never complained to Ms. Massa that she was being sexually harassed by anyone at NewRoc. (Massa Aff. ¶ 35)

61.     Mr. Meskunas never had any knowledge of Plaintiff's purported complaints about him.  (Massa Aff. ¶ 35; Meskunas Tr. ¶ 89-90).

62.     Mr. Meskunas terminated Plaintiff's employment solely as a result of Plaintiff's poor job performance. (Massa Aff. ¶ 35)

63. NewRoc did not refuse Plaintiff COBRA coverage, nor was such coverage cancelled in retaliation for Plaintiff's commencement of this action against NewRoc. (Massa Aff. ¶ 36)

64. All appropriate paperwork was submitted to the insurance company by NewRoc for continuation of Plaintiff's coverage. (Massa Aff. ¶ 36)

65. NewRoc voluntarily corrected the error of the insurance company with respect to Plaintiff's COBRA coverage. (Massa Aff. ¶ 36)

66. Plaintiff's COBRA coverage ended solely as a result of Plaintiff's failure to submit payment for continuation of that coverage by the time specified in the regulation. (Massa Aff. ¶ 37)

67. On March 5, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation. (Donnelly Dec. Ex. 3)

68. On April 3, 2007, the EEOC issued Plaintiff a Right to Sue letter. (Donnelly Dec. Ex. 4)

69. On April 16, 2007, Plaintiff commenced this action in United States District Court, Southern District of New York by filing a Summons and Complaint ("Complaint") (Donnelly Dec. Ex. 6).

70. On May 24, NewRoc filed an answer ("Answer") denying the material allegations in the Complaint in the entirety. (Donnelly Dec. Ex. 7)

71. On August 21, 2007, Plaintiff filed an Amended Complaint against NewRoc alleging that NewRoc discriminated against and harassed Plaintiff on the basis of her sex, in

violation of Title VII and that she was unlawfully terminated in retaliation for complaining about the alleged sexual harassment and discrimination. (Donnelly Dec. Ex. 1)

72.  Plaintiff's Amended Complaint also alleges that NewRoc failed to provide medical coverage for Plaintiff pursuant to COBRA in retaliation for Plaintiff's commencement of the action against NewRoc. (Donnelly Dec. Ex. 1)

73.  On September 11, 2007, NewRoc filed an Amended Answer denying the material allegations of the Amended Complaint in the entirety. (Donnelly Dec. Ex. 2)

Dated: New York, New York
December 7, 2007     December 7, 2007

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorneys for Defendant NewRoc Motorcycles, LLC*
521 Fifth Avenue, Tenth Floor
New York, New York 10175
(212) 682-0020


By: ____/ MED/_____
     Mary Ellen Donnelly (MD 4396)

## CERTIFICATE OF SERVICE

The undersigned, a member of the Bar of this Court, hereby certifies that she caused a true and accurate copy of the foregoing Rule 56.1 Statement to be served via electronic filing and overnight mail on December 7, 2007 upon:

>Jeffrey M. Bernbach
>Attorney for Plaintiff
>245 Main Street, 5th Floor
>White Plans, New York, NY 10601

*[signature]*
Mary Ellen Donnelly (MD 4396)
**PUTNEY, TWOMBLY HALL & HIRSON, LLP**
*Attorneys for Defendant,*
*NewRoc Motorcycles, LLC*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020