UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHELLE LOSCALZO,

          Plaintiff,

  - against -

NEWROC MOTORCYCLES, LLC
          Defendant.

------------------------------------------------------------x

Case No.: 07 CIV 3046
(CLB)

**AFFIDAVIT OF JOHN MESKUNAS IN SUPPORT OF NEWROC'S MOTION**

**STATE OF NEW YORK** )
                           ) ss.:
**COUNTY OF NEW YORK** )

**JOHN MESKNUAS**, being, duly sworn deposes and says:

1. I am the President and partial Owner of defendant NewRoc Motorcycles, LLC ("NewRoc"), and am fully familiar with the facts and circumstances stated herein. I submit this affidavit in support of NewRoc's motion for partial summary judgment.

2. As President and Owner of NewRoc, I am responsible for overseeing all of the operations of the dealership and ensuring that all employees are adequately performing their respective job responsibilities.

3. NewRoc is a Harley Davidson motorcycle dealership located in New Rochelle, New York. NewRoc began operations in November, 2005.

4. NewRoc sells both new and used Harley Davidson motorcycles, as well as other Harley Davidson apparel and merchandise. There are five departments within NewRoc: the Sales Department, the Service Department, the Parts Department, the Motorclothes Department, and the Administration Department.

5.      Plaintiff Michelle Loscalzo ("Plaintiff"), commenced employment with NewRoc on November 16, 2005, as a part time Greeter. As a Greeter, Plaintiff's primary job responsibility was to welcome people to the store and obtain their names, phone numbers and e-mail addresses for NewRoc's mailing list. Additionally, the Greeter is expected to keep the entrance and surrounding area clean and presentable, including dusting off the motorcycles, cleaning the counters and performing other various tasks to ensure the area remains presentable.

6.      Plaintiff remained in the Greeter position until August 21, 2006, when she requested and was offered a position as a Motorcycle Sales Associate. Although Plaintiff was inexperienced as a Sales Associate, I decided to give Plaintiff an opportunity as a Sales Associate because one of NewRoc's Sales Associates was out on a disability leave and NewRoc was in desperate need of an additional salesperson. Plaintiff's salary structure as a Sales Associate was $10 per hour plus commissions earned on the sale of motorcycles. Accordingly, Plaintiff's income was directly related to Plaintiff's ability to sell motorcycles.

7.      As a Sales Associate, Plaintiff was required to provide prompt, dependable, high quality, vehicle sales to customers by using current proactive feature benefit sales techniques. Plaintiff's specific responsibilities, included but were not limited to: attaining new and used sales quotas as agreed upon with the Sales Manager, presenting the features of all products to customers along with their benefits, maintaining the computerized inventory control system along with net profit objectives which eliminate the possibility of lower than anticipated profits, following procedures to ensure timely and proper completion of all paperwork, following procedures for quick and efficient handling of warranty items, using a common and consistent quotation methodology for vehicle sales, trade-ins and purchases, conducting a road test, and

pre-delivery inspection prior to delivery to the costumer and maintaining profit margin objectives for all vehicle sales.

8.  Plaintiff's direct supervisor was Wayne Sforza, NewRoc's Sales Manager. As Sales Manager, Mr. Sforza was required to supervise the Sales Associates and the overall operation of the Sales Department. Mr. Sforza also acted as a Sales Associate and received a commission for any motorcycles he was responsible for selling.

9.  As President and Owner of NewRoc, I also indirectly supervised Plaintiff in the performance of her job responsibilities.

10. Immediately upon assuming the Sales Associate position, it became readily apparent that Plaintiff had little interest in obtaining the skills and knowledge necessary to sell Harley Davidson Motorcycles. Plaintiff refused to take the training classes offered by Harley Davidson through on line internet access. Plaintiff also repeatedly requested that I intercede in and overrule decisions made by Mr. Sforza in connection with Plaintiff's job performance. Since it was in the interest of NewRoc to have Plaintiff succeed in her Sales Associate position, I often overruled Mr. Sforza and permitted Plaintiff to participate in sales commissions to which she would not otherwise be entitled. On numerous occasions I also directed personal customers of mine to Plaintiff so that she would receive commissions for those sales.

11. Despite numerous opportunities provided to Plaintiff to succeed in her position at NewRoc, Plaintiff's lack of knowledge both with respect to the motorcycles and the policies and procedures for sale of the motorcycles resulted in numerous mistakes on Plaintiff's part. On several occasions, Plaintiff failed to record customer deposits in the customers deal folder or on the computer as required by the dealership. Over the course of the five month period Plaintiff was employed by NewRoc as a Sales Associate, Plaintiff was solely responsible for the sale of

19 motorcycles or approximately 4 motorcycles a month. The total number of motorcycles sold by NewRoc in that period of time was 150. NewRoc employed one other full time Sales Associate and one part-time Sales Associate in addition to Plaintiff. Clearly, Plaintiff was underperforming in her position as a Sales Associate.

12.     As a result of Plaintiff's lack of selling skills and poor work performance, Plaintiff received numerous counselings and warnings about her job performance from both Mr. Sforza and the Human Resources Manager, Patricia Massa. While I did not participate in most of the formal performance counseling, I was well aware of Plaintiff's performance issues and the counseling she was receiving from Ms. Massa.

13.     I did counsel Plaintiff on an occasion when I determined that representations she had made to me about the sale of a motorcycle were disingenuous. Plaintiff had represented to me that NewRoc had offered a customer $14,200 for his motorcycle trade-in and that Mr. Sforza had arbitrarily changed the offer to $13,500. In reality, however, the customer had refused the initial offer of $14,200 for his trade in and attempted to sell his motorcycle on EBAY. The customer had been unable to sell his motorcycle and returned to NewRoc two months later. As a result of the delay, the new book value on the motorcycle had declined to $13,500. Plaintiff failed to disclose this string of events to me. On January 27, 2007, I verbally warned Plaintiff that if she lied to me again I would terminate her employment.

14.     On one occasion I encountered Plaintiff at a local restaurant and bar after she had called in sick for work the same morning. Plaintiff did not seem apologetic, but rather acknowledged to me that she had not been sick and had simply not felt like working that day.

15.     I again counseled Plaintiff on February 4, 2007, for dishonesty in connection with a motorcycle sale. Plaintiff had met with a customer regarding the sale of a motorcycle. The

customer left a deposit on the motorcycle, and Plaintiff failed to disclose to him the fact that the front fender had been repainted. I advised Plaintiff that NewRoc is not in the business of deceiving their customers. I further advised Plaintiff that her lack of truthfulness would result in NewRoc replacing the fender at a cost around $350.00. I explained to Plaintiff that her repeated mistakes on many of her deals have cost NewRoc money. I again reiterated to Plaintiff that I could not employ a Sales Associate whom I did not trust.

16. I gave Plaintiff numerous opportunities to improve upon her performance. However, in February, after Plaintiff failed to show any improvement, I made the decision to terminate her. This decision was based solely upon Plaintiff's failure to obtain the product knowledge necessary to represent NewRoc and her obvious inability to sell motorcycles.

17. On February 7, 2007, I advised both Ms. Massa and Mr. Sforza, that I had decided to terminate Plaintiff's employment with NewRoc due to her numerous and ongoing performance issues. Both Mr. Sforza and Ms. Massa confirmed that Plaintiff's job performance had not improved despite the numerous counselings Plaintiff had received. Both Mr. Sforza and Ms. Massa concurred with my decision.

18. On February 8, 2007, Ms. Massa and I met with Plaintiff to advise her that her employment with NewRoc was being terminated. Plaintiff did not appear to be surprised about the decision, indicated that she understood the basis for her termination and stated that the termination of her employment was more than half of her fault.

19. On February 20, 2007, I received a letter from an attorney on behalf of Plaintiff advising me that Plaintiff was asserting a claim against me for sexual harassment. I was extremely shocked and surprised by the allegations in the letter. At no time during her employment with NewRoc had Plaintiff ever advised me that she felt any of my conduct towards

her was inappropriate. Additionally, to my knowledge, Plaintiff never once complained to anyone during her 15 months at NewRoc that I had sexually harassed her. While Plaintiff repeatedly complained about Mr. Sforza's management style, she never once complained about any of my conduct. Rather, Plaintiff repeatedly requested my assistance in dealing with Mr. Sforza, which assistance I always provided.

20. On April 16, 2007, Plaintiff commenced this action against NewRoc alleging that I had sexually harassed her during her employment with NewRoc.

21. On August 21, 2007, Plaintiff filed her Amended Complaint alleging that her employment had been terminated in retaliation for Plaintiff's complaints to Ms. Massa regarding my conduct and as a result of Plaintiff's statement to Ms. Massa that she had consulted an attorney. Plaintiff also asserted a claim in her Amended Complaint that her COBRA coverage had been terminated in retaliation for the filing of an action against NewRoc. Plaintiff's retaliation claims are without merit.

22. It is readily apparent from a review of the facts of this matter that Plaintiff's employment was terminated due solely to her poor job performance. There is simply no documentary evidence or testimony that I had any knowledge of Plaintiff's purported complaints about my conduct or any consultation with an attorney at the time that I made the decision to terminate Plaintiff's employment. The record is replete with evidence however that I made the decision to terminate Plaintiff's employment based solely upon Plaintiff's documented performance issues as a Sales Associate.

23. Further, Plaintiff's COBRA coverage was discontinued solely as a result of Plaintiff's failure to submit timely payment for continuation of that coverage. It was Plaintiff's

own actions, or inaction, that resulted in the termination of her health insurance benefits, not any purported retaliation by NewRoc.

24. I afforded Plaintiff numerous opportunities to succeed as a Sales Associate at NewRoc. I encouraged Plaintiff to take the training courses, I directed customers to Plaintiff so she would earn a commission on those sales and I repeatedly interceded in Plaintiff's disagreements with her direct supervisor. Despite my efforts, Plaintiff's job performance failed to improve. When it became readily apparent that Plaintiff was not going to develop as a Sales Associate, it was no longer in the best interest of NewRoc to retain Plaintiff in that position. It is solely as a result of Plaintiff's inadequate performance and lack of improvement, that Plaintiff's employment was terminated.

JOHN MESKUNAS

Sworn before me this 7 day
of December 7, 2007

Notary Public

JANICE VALLEJOS
Notary Public - State of New York
Reg. No. 01VA6029069
Qualified in Westchester County
My Commission Expires 4-5-09

7