UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MICHELLE LOSCALZO,                         :
                                           :     Case No.: 07 CIV 3046
       Plaintiff,                          :     (CLB)
                                           :
- against -                                :
                                           :     AFFIDAVIT OF PATRICIA
                                           :     MASSA IN SUPPORT OF
NEW ROC MOTORCYCLES, LLC                   :     <u>NEW ROC'S MOTION</u>
       Defendant.                          :
                                           :
                                           :
------------------------------------------------------------------x


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )


      **PATRICIA MASSA**, being, duly sworn deposes and says:

      1.     I am the Manager of Human Resources and Promotions Manager for defendant NewRoc Motorcycles, LLC ("NewRoc") and am fully familiar with the facts and circumstances stated herein. I submit this affidavit in support of NewRoc's motion for partial summary judgment.

      2.     I commenced employment with NewRoc in November, 2005.

1

3. NewRoc is a Harley Davidson motorcycle dealership. NewRoc sells both new and used Harley Davidson motorcycles, as well as other Harley Davidson apparel and merchandise. Within NewRoc there are 5 departments: the Sales Department, the Service Department, the Parts Department, the Motorclothes Department, and the Administration Department.

4. As Human Resources Manager, I am responsible for all aspects of employee relations, including, but not limited to, payroll, benefits, labor relations and employee discipline. I also organize and oversee all aspects of NewRoc's promotional events as Promotion Manager.

5. Plaintiff Michelle Loscalzo ("Plaintiff"), commenced employment with NewRoc on November 16, 2005, as a part time Greeter. As a part time Greeter, Plaintiff was scheduled to work primarily on the weekends and was charged with the responsibility of greeting customers as they entered the dealership. At the time that she commenced employment with NewRoc, Plaintiff was provided with a copy of NewRoc's Employee Handbook, which contains NewRoc's Policy against Discrimination and Sexual Harassment. A copy of NewRoc's Employee Handbook is annexed as Exhibit A.

6. Plaintiff remained in the Greeter position until August 21, 2006, when she requested and was offered a position as a Motorcycle Sales Associate.

7. As a Sales Associate, Plaintiff was required to provide prompt, dependable, high quality, vehicle sales to customers by using current proactive feature benefit sales techniques. Plaintiff's specific responsibilities included, but were not limited to: (1) attaining new and used sales quotas as agreed upon with the Sales Manager; (2) presenting the features of all products to customers along with their benefits; (3) maintaining the computerized inventory control system along with net profit objectives which eliminate the possibility of lower than anticipated profits;

(3) following procedures to ensure timely and proper completion of all paperwork; (4) following procedures for quick and efficient handling of warranty items; (5) using a common and consistent quotation methodology for vehicle sales, trade-ins and purchases; (6) conducting a road test and pre-delivery inspection prior to delivery to the costumer; (7) ensuring that the showroom floor and motorcycles were clean and suitable for display; and (8) maintaining profit margin objectives for all vehicle sales. A copy of the Sales Associate job description is annexed as Exhibit B.

8. Plaintiff's salary structure as a Sales Associate was $10.00 per hour plus commissions earned on the sale of motorcycles. Accordingly, Plaintiff's income was directly related to Plaintiff's ability to sell motorcycles.

9. Plaintiff's direct supervisor was Wayne Sforza, NewRoc's Sales Manager. As Sales Manager, Mr. Sforza was required to supervise the Sales Associates and the overall operation of the Sales Department. Mr. Sforza also held the dual role of Sales Associates and also received a commission for any motorcycles he was responsible for selling.

10. Plaintiff was also supervised indirectly by John Meskunas, President and Owner of NewRoc. As President and owner of NewRoc, Mr. Meskunas was responsible for overseeing all of the operations of the dealership and ensuring that all employees were adequately performing their respective job responsibilities.

11. Immediately upon assuming the Sales Associate position, it became readily apparent that Plaintiff lacked the skills and knowledge necessary to sell Harley Davidson Motorcycles. Plaintiff resisted all efforts by Mr. Sforza to assist and train Plaintiff with her job responsibilities as a Sales Associate. Plaintiff would either completely ignore Mr. Sforza's

directives regarding her job responsibilities or appeal directly to Mr. Meskunas to change the directives of her immediate supervisor.

12. Plaintiff complained to both Mr. Meskunas and me on numerous occasions that she did not like Mr. Sforza's management style. Plaintiff acknowledged to me that she refused to follow Mr. Sforza's instructions and often went out of her way to antagonize him.

13. Plaintiff would repeatedly arrive for work late, despite being counseled by Mr. Sforza on numerous occasions about her tardiness. Over the five month period Plaintiff was employed by NewRoc as a Sales Associate, she reported to work late on at least 49 different workdays. A copy of Plaintiff's time records is annexed as Exhibit C.

14. Plaintiff also failed to complete the training courses available to her online through the Harley Davidson online training cite. Both Mr. Meskunas and Mr. Sforza signed Plaintiff up for numerous training courses, such as: C.U.S.T.O.M Motorcycle Sales, Selling Skills I, It's Your Loss, VRSC Sales and Competitive, Knowledge, Understanding the Customer – Unit 1, The Buell Opportunity, Selling Skills II, Make Mine Genuine, Selling Skills for the Sportster Family, VRSC Sales and Competitive Knowledge, 2007 Model Sales Walk-Around, Getting Yourself Read – Unit 2, Customer Focused Selling 1 & 2, Customer Focused Selling 3 & 4, Customer Focused Selling – 5 & 6, Customers for Life – 1 & 2, Customers for Life – 3, 4, & 5, Introduction to the V-Rod. Out of 18 courses, Plaintiff only completed and passed 4 of the courses. A copy of the training course list is annexed as Exhibit D.

15. As a result of Plaintiff's lack of selling skills and poor work performance, Plaintiff received numerous counselings and warnings about her job performance. Within a five month period, Plaintiff received seven written warnings about her job performance. Specifically,

4

on September 3, 2006, Plaintiff received a written warning from Mr. Sforza for lateness and attendance. The warning stated:

> [Plaintiff] came in 27 minutes late wearing sneakers after verbal warning regarding tardiness and appropriate business attire had been given one day prior.

Plaintiff acknowledged receipt of this warning. A copy of the September 3, 2006 warning is annexed as Exhibit E.

16. On September 21, 2006, Plaintiff received a second written warning from Mr. Sforza for insubordination. Plaintiff had been instructed not to deliver motorcycles to the customer while her manager was not present. Plaintiff had ignored this instruction and delivered a motorcycle to a customer while the Manager was off from work. Plaintiff again acknowledged receipt of this warning. A copy of the September 21, 2006 warning is annexed as Exhibit F.

17. Despite counseling, Plaintiff failed to improve in the performance of her job responsibilities. On December 20, 2006, Plaintiff received another written warning from Mr. Sforza, for failure to adhere to Sales Department Policies and Procedure. Plaintiff refused to sign the warning. A copy of the December 20, 2006 Warning is annexed as Exhibit G.

18. On January 5, 2007, Plaintiff received an additional warning for failure to properly process deal paperwork and a customer deposit. Apparently, Plaintiff had accepted a deposit from a customer for the purchase of a motorcycle and failed to properly log the deposit. The customer then returned to the dealership to discuss his purchase. Plaintiff was not present at the time and Mr. Sforza could not confirm that the customer had actually already placed a deposit on the motorcycle. Although the customer's deposit receipt was eventually located in the deal folder, Plaintiff's improper conduct had raised concerns both within NewRoc and with the

customer about Plaintiff's ability to perform her job responsibilities in an appropriate manner. A copy of the January 5, 2007 Warning is annexed as Exhibit H.

19. On January 22, 2007, Mr. Sforza counseled Plaintiff regarding her failure to follow proper procedure. Mr. Sforza had previously instructed Plaintiff not to remove items from either the business manager's or the sale manager's office. Plaintiff had borrowed a chair from Mr. Sforza's office failed to return the chair before she left for the day. Mr. Sforza discussed with Plaintiff that she had been instructed numerous times since her hire about proper procedures and conduct for the sale department, but has continually ignored the instruction.

20. Plaintiff's job performance still did not improve despite repeated warnings and counseling. On January 27, 2007, Plaintiff received a verbal warning from Mr. Meskunas, for failing to disclose information relevant to a motorcycle trade-in. Plaintiff had told Mr. Meskunas that the customer had been offered $14,200 for his motorcycle trade-in, and that Mr. Sforza had arbitrarily changed the offer to $13,500. In reality, however, the customer had refused the initial offer of $14,200 for his trade in and attempted to sell his motorcycle on EBAY. The customer had been unable to sell his motorcycle and returned to NewRoc two months later. As a result of the delay, the new book value on the motorcycle had declined to $13,500. Plaintiff failed to disclose this string of events to Mr. Meskunas. Mr. Meskunas advised Plaintiff that this was her final warning, and that if she lied to him again, she would be terminated. A copy of the January 27, 2007 Warning is annexed as Exhibit I.

21. Plaintiff's was again counseled on February 4, 2007 by Mr. Meskunas, for dishonesty in connection with a motorcycle trade-in. Plaintiff had met with a customer regarding the sale of a motorcycle. The customer left a deposit on the motorcycle and Plaintiff failed to disclose to him the fact that the front fender had been repainted. Mr. Meskunas advised Plaintiff

6

that New Roc is not in the business of deceiving their customers and that Plaintiff's lack of truthfulness would likely result in New Roc replacing the fender at a cost around $350. Mr. Meskunas explained to Plaintiff that her repeated mistakes on many of her deals have cost New Roc money and that she was simply failing to adequately perform her job responsibilities. A copy of the February 4, 2007 Warning is annexed as Exhibit J.

22. On February 7, 2007, as a result of Plaintiff's poor job performance and dishonesty, Mr. Meskunas advised me that he had decided to terminate Plaintiff's employment with NewRoc. I confirmed with Mr. Meskunas the numerous counselings Plaintiff had received, as well as Plaintiff's acknowledgment to me that she enjoyed antagonizing Mr. Sforza. I advised Mr. Meskunas that I agreed with his decision to terminate Plaintiff's employment.

23. On February 8, 2007, Mr. Meskunas and I met with Plaintiff to advise her of the decision to terminate her employment with NewRoc. Plaintiff did not appear to be surprised about the decision, stating that she was aware that her termination was more than half of her fault

24. Plaintiff and I then met without Mr. Meskunas present to discuss her terminal benefits. I confirmed with Plaintiff that she was eligible for COBRA benefits and provided her with the necessary paperwork.

25. On February 20, 2007, Mr. Meskunas received a letter from an attorney on behalf of Plaintiff advising Mr. Meskunas that Plaintiff was asserting a claim against him for sexual harassment. I was extremely shocked and surprised by the allegations in the letter. At no time during the 15 month period that Plaintiff was employed by NewRoc had she ever complained to me about any alleged sexual harassment by Mr. Meskunas. Quite the contrary, Plaintiff would repeatedly request and receive assistance from Mr. Meskunas to resolve any disagreement she

had with Mr. Sforza. While Plaintiff repeatedly complained to me about Mr. Sforza's management style, she never voiced any complaints to me about Mr. Meskunas.

26. On February 23, 2007, Plaintiff contacted me by telephone regarding her claims against NewRoc. I again reiterated to Plaintiff that I was shocked by her allegations. Plaintiff has simply never complained to anybody about any alleged sexual harassment by Mr. Meskunas.

27. Plaintiff followed up our telephone conversation with an email apologizing for not having said anything sooner about her claims against NewRoc. I again reiterated by shock and disgust over Plaintiff's fabricated allegations. A copy of the email exchange is annexed as Exhibit K.

28. Plaintiff again contacted me by electronic mail on February 27, 2007, and requested that I email her the COBRA forms. A copy of Plaintiff's email is annexed as Exhibit L. Pursuant to her request, I again provided Plaintiff with the appropriate COBRA forms.

29. On April 14, 2007, I received Plaintiff's completed COBRA forms along with an undated check, apparently for the continuation of her medical insurance. Shortly thereafter, I received notification from the bank that they would not negotiate Plaintiff's undated COBRA check. I returned the check to Plaintiff and requested that she date it so that it could be resubmitted. A few days later, I received Plaintiff's dated check and submitted it to the Bank of American for deposit. Based upon the payment I received from Plaintiff, Plaintiff's health insurance benefits were continued under COBRA through April 30, 2007.

30. On April 16, 2007, Plaintiff commenced this action against NewRoc alleging that she had been sexually harassed by Mr. Meskunas during her employment with NewRoc. To my knowledge, Plaintiff's initial Complaint did not contain any claim of retaliation. A copy of the Complaint is annexed as Exhibit M.

31.     Since Plaintiff had only submitted payment for COBRA benefits through April 31, 2007, in order to continue her health insurance benefits past April 31, 2007, Plaintiff was required to submit a COBRA check by May 1, 2007. I did not receive any check from Plaintiff for continuation of her health insurance under COBRA by May 1, 2007.

32.     Since COBRA permits a thirty (30) day grace period for payment to be made for continuation of benefits, Plaintiff had until June 1, 2007, to submit her payment to me. By June 1, 2007, I still had not received Plaintiff's payment for her COBRA benefits. Plaintiff's health insurance coverage was discontinued as of May 1, 2007, as a result of Plaintiff's nonpayment. On June 6, 2007, I received an unstamped envelope from Plaintiff, postmarked June 4, 2007, presumably containing Plaintiff's May 1, 2007 check for COBRA benefits. I did not open the envelope, nor was the check deposited. A copy of the envelope is annexed as Exhibit N.

33.     On July 16, 2007, I learned for the first time that the insurance company had erroneously advised Plaintiff that her health insurance coverage had ended as of February 28, 2007. After reviewing the insurance bills, I immediately contacted the health insurance company to correct this error. On September 9, 2007, I received notification from the health insurance company that the error had been corrected. A copy of this notification is annexed as Exhibit P.

34.     On August 21, 2007, Plaintiff filed her Amended Complaint alleging that her employment had been terminated allegedly in retaliation for Plaintiff's complaints to me that she was being sexually harassed by Mr. Meskunas. Plaintiff also asserted a claim that her COBRA coverage had been terminated in retaliation for the filing of an action against NewRoc. Plaintiff's retaliation claims are without merit.

35.     It is readily apparent from a review of the facts of this matter that Plaintiff's employment was not terminated in retaliation for any allegedly protected activity. First,

9

although Plaintiff complained to me about many things, Plaintiff never complained to me that she was being sexually harassed by anyone at NewRoc. Moreover, Plaintiff does not assert, nor could she, that Mr. Meskunas had any knowledge of her purported complaints about him. Mr. Meskunas terminated Plaintiff's employment solely as a result of Plaintiff's poor job performance after Plaintiff was afforded numerous opportunities to improve in that performance.

36.     Additionally, Plaintiff was not refused COBRA coverage, nor was such coverage cancelled in retaliation for Plaintiff's commencement of this action against NewRoc. All appropriate paperwork was submitted to the insurance company for continuation of Plaintiff's coverage. Upon learning that the insurance company had erroneously discontinued Plaintiff's insurance coverage as of February 28, 2007, I immediately contacted the insurance company to rectify that error. Surely NewRoc cannot be deemed to have retaliated against Plaintiff as a result of an error by the insurance company.

37.     Finally, Plaintiff's COBRA coverage ended solely as a result of Plaintiff's failure to submit payment for continuation of that coverage by the time specified in the regulation. Plaintiff's failure to submit timely payment to continue her coverage is simply another example of Plaintiff's inability to follow direction and comply with directives. It was Plaintiff's own failings and not any retaliation by NewRoc which resulted in her loss of health insurance.

38.     I am disheartened that Plaintiff has chosen to bring an action against NewRoc after Mr. Meskunas went to great lengths to assist Plaintiff in succeeding in her role as a Sales Associate. Plaintiff herself acknowledges that Mr. Meskunas resolved any issue she brought to him during her employment with NewRoc. NewRoc afforded Plaintiff numerous opportunities to improve upon her job performance. As demonstrated by her numerous disciplines and

repeated lateness, Plaintiff's job her performance failed to improve. It is solely as a result of this inadequate performance and lack of improvement, that Plaintiff's employment was terminated.

*Patricia Massa*
PATRICIA MASSA

Sworn before me this 7 day
of December __, 2007

*Notary Public*

JANICE VALLEJOS
Notary Public - State of New York
Reg. No. 01VA6029069
Qualified in Westchester County
My Commission Expires 8-5-09

11