# EXHIBIT D

**Transcript for Group Member**                                    Page 1 of 1

# Transcript for MICHELLE LOSCALZO
## Courses Completed

| Code | Title | Completed on | Score | Passed |
|------|-------|--------------|-------|--------|
| PROSELL-I 071.06 | C.U.S.T.O.M. Motorcycle Sales | Oct 31, 2006 | Attended | Y |
| PACE-O 501 | Selling Skills I | Sep 2, 2006 | 21 | Y |
| PACE-O 511 | It's Your Loss | Sep 2, 2006 | 21 | Y |
| PROSELL-O 301.06 | VRSC Sales and Competitive Knowledge | Sep 7, 2006 | 6 | N |
| PROSELL-O 801 | Understanding The Customer - Unit 1 | Sep 11, 2006 | 12 | N |
| PROSELL-O 801 | Understanding The Customer - Unit 1 | Sep 11, 2006 | 11 | N |
| PROSELL-O 801 | Understanding The Customer - Unit 1 | Sep 11, 2006 | 15 | Y |

## Recognitions In Progress

| Level | Name | Enrolled on |
|-------|------|-------------|
| | Technician Recognition | |
| Level1 | Staff | Jan 15, 2007 |
| | Motorcycle Sales Professional | |
| Level1 | Bronze - Vehicle Sales | Sep 1, 2006 |

## Cancelled Enrollments

| Code | Title | Enrolled on |
|------|-------|-------------|
| BUELL-O 704.05 | The Buell Opportunity | Nov 14, 2006 |
| PACE-O 502 | Selling Skills II | Sep 2, 2006 |
| PACE-O 505 | Make Mine Genuine | Sep 2, 2006 |
| PROSELL-O 300.06 | Selling Skills for the Sportster Family | Sep 5, 2006 |
| PROSELL-O 301.06 | VRSC Sales and Competitive Knowledge | Sep 7, 2006 |
| PROSELL-O 302.06 | 2007 Model Sales Walk-Around | Sep 5, 2006 |
| PROSELL-O 802 | Getting Yourself Ready - Unit 2 | Sep 5, 2006 |
| PROSELL-O 803 | Customer Focused Selling - 1&2 | Sep 5, 2006 |
| PROSELL-O 804 | Customer Focused Selling - 3 & 4 | Sep 5, 2006 |
| PROSELL-O 805 | Customer Focused Selling - 5&6 | Sep 5, 2006 |
| PROSELL-O 901 | Customers for Life - 1&2 | Sep 5, 2006 |
| PROSELL-O 902 | Customers for Life - 3,4 & 5 | Sep 5, 2006 |
| PROSELL-O 960 | Introduction to the V-Rod | Sep 5, 2006 |

# EXHIBIT E

# DISCIPLINE DOCUMENTATION FORM

**Employee Information**

Name of Employee: _Milli Loscalzo_

Employee's Job Title: _Sales Rep_

**Incident Information**

Date/Time of Incident: _9-3-06_

Location of Incident: _____

Description of Incident: _Came in 27 minutes late wearing sneakers after verbal warning regarding tardiness and appropriate business attire had been given 1 day prior._

Witnesses to Incident: _____

Was this incident in violation of a company policy?    (Yes)    No

If yes, specify which policy and how the incident violated it. _Time & Attendance and Dress Code_

**Action Taken**

What action will be taken against the employee? _Employee was sent home by Manager - Wayne Sforza_

Has the impropriety of the employee's actions been explained to the employee? (Yes)    No

Did the employee offer any explanation for the conduct? If so, what was it? _No_

Signature of person preparing report: _____

Date: _____

CCH  © Copyright CCH INCORPORATED. All rights reserved.

# EXHIBIT F

# DISCIPLINE DOCUMENTATION FORM

**Employee Information**

Name of Employee: MIKKI LOSCALZO

Employee's Job Title: SALES ASSOCIATE

**Incident Information**

Date/Time of Incident: 09-21-06    4:00 - 5:00 PM

Location of Incident:

Description of Incident: EMPLOYEE INSTRUCTED NOT TO DELIVER MOTORCYCLES WHILE MANAGER WAS NOT PRESENT. EMPLOYEE IGNORED INSTRUCTION WHILE MANAGER WAS OFF AND DELIVERED MOTORCYCLE TO WILLIAM COLISH.

Witnesses to Incident:

Was this incident in violation of a company policy?    (Yes)    No

If yes, specify which policy and how the incident violated it. INSUBORDINATION

**Action Taken**

What action will be taken against the employee? FORFEIT COMMISSION ON DEAL

Has the impropriety of the employee's actions been explained to the employee? (Yes)   No

Did the employee offer any explanation for the conduct? If so, what was it? EMPLOYEE CONTINUED TO ARGUE WITH MANAGER AND STATED "THEN YOU TELL YOUR CUSTOMERS TO STOP BOTHERING ME ABOUT THEIR BIKES"

Signature of person preparing report: WL

Date: 09-22-06

(CCH) © Copyright CCH INCORPORATED. All rights reserved.

CONFIDENTIAL
D0044

# EXHIBIT G

  

To:     Michelle Loscalzo – Sales Associate Trainee

From:  Wayne Sforza – Sales Manager

Date:  December 20, 2006

Re:     **Adherence to Sales Department Policies and Procedures**

***********************************************************************

The Motorcycle Sales Department of NewRoc Harley-Davidson / Buell have adopted certain policies and procedures with regard to new and used motorcycle sales processed by the dealership. These policies and procedures have been developed with years of industry experience and in accordance with New York State Business Law, New York State Department of Motor Vehicle regulations, The Harley-Davidson Motor Company's Non-Retail Sales Policies, etc. In addition to creating a positive purchase experience for our customers these policies and procedures are intended to protect the dealership from liability and aid in the efficient processing of all motorcycle purchases. Strict adherence to these policies and procedures are **required** and expected by all employees. Although you have been instructed in these policies and procedures numerous times you have unfortunately continued to disregard them. Further disregard of these policies and procedures will result in disciplinary action which may include, but is not limited to, suspension, forfeiture of commissions, and/or termination.

REFUSED TO SIGN
COPY GIVEN

_____          _____
I have read and received a copy of the above.          Wayne Sforza
Michelle Loscalzo

Cc: Jack Meskunas
    Patricia Massa

*www.nrhd.com*                *8 Industrial Lane*                *Phone 914-632-nrhd*
                             *New Rochelle, NY 10805*          *Toll Free 866-632-nrhd*

CONFIDENTIAL
D0043

# EXHIBIT H

  

To:    Michelle Loscalzo – Sales Associate Trainee

From:  Wayne Sforza – Sales Manager

Date:  January 5, 2007

Re:    **Failure to Properly Process Deal Paperwork and Customer Deposit**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The trust and confidence our customers place in us is demonstrated each time they make a purchase at our dealership.   With this comes a legal and moral obligation on our part to safeguard their personal and financial information.  Additionally, the proper and efficient processing of customer information and deal deposits is of the utmost importance to the smooth operation of the sales department and the dealership.  Although you have been instructed on these processes and their importance numerous times in the past, you have once again failed to follow them.  On December 18, 2006 you took a $500 deposit from Timothy J. Stefanik.  You left this deposit unattended and unaccounted for in a deal folder.  A deal was **NOT** entered into the computer and the customer's deposit was **NOT** recorded as required.  It was only upon the arrival of the customer at the dealership today that this was discovered.  Not only is this a serious violation of the sales department's processes and procedures, it has also caused the customer to doubt the competence of yourself and of the dealership.  C ontinued disregard of policies  and procedures cannot and will not be tolerated, and will result in disciplinary action which may include, but is not limited to, suspension, forfeiture of commissions, and/or termination.

I have read and received a copy of the above.
Michelle Loscalzo

Wayne Sforza

Patricia Massa as witness

Cc:  Jack Meskunas

*www.nrhd.com*

*8 Industrial Lane*
*New Rochelle, NY 10805*

*Phone 914-632-nrhd*
*Toll Free 86(-632-nrhd*

CONFIDENTIAL
D0040

Deposit Payments

NEWROC HARLEY-DAVIDSON/BUELL
8 INDUSTRIAL LANE
NEW ROCHELLE, NY 10805-0000
Phone:        Fax:

Invoice Number: 24684
Date: 1/5/07                Time: 11:37AM
Console No.: 005            Cashier: WS

Customer Number: 4355
STEFANIK, TIMOTHY J          Phone: (845) 621-0455
54 FENWOOD RD                Work:  (914) 760-0767      Ext: CELL
                             Fax:
MAHOPAC NY 10541

| Transaction Type | Transaction ID | Original Invoice | Original Amount | Paymen |
|---|---|---|---|---|
| Major Unit Deposit | 502 | 24684 | 16,327.75 | 500.00 |



| !!! Deposit Payments !!! | | Check/Credit Card Details | | |
|---|---|---|---|---|
| | | Type | Number | Amount |
| | | VIS | xxxx-xxxx-xxxx-9991 | 500.00 |
| Credit Card: | 500.00 | | | |
| Total Received: | 500.00 | | | |
| Less Change: | 0.00 | | | |
| Total: | 500.00 | | | |

CONFIDENTIAL
D0041

# EXHIBIT I

27 January 2007

Memo to file of Mikki Loscalzo

RE: Battaglia Deal

At approximately 2:30 pm on the 27th of January 2007 I sat down with Mikki to discuss the Battaglia Deal. She stated she was dissatisfied with the way the deal went, especially in regards to Battaglia adding an FLHRS as a second trade-in, and his not disclosing that the bike was damaged and repainted, a fact we only discovered after the trade was consummated.

I stated that I too was dissatisfied, as Mikki had misled me regarding the first trade in of an FLHTCUI. Mikki told me that the customer was offered $14,200 for his trade, and then Wayne arbitrarily changed the offer to $13,500. In fact, what really happened was that the customer refused the $14,200 and attempted to sell his bike on EBAY, and two months later, after no success, decided to trade it in. The new book value had now declined to $13,500, which Wayne told him.

I told Mikki that if I am given bad information, then I will end up making bad decisions. I told her that she lied to me regarding this trade, as she had lied to me twice before on other issues by only giving me part of the story, and not the entire story. I advised Mikki that this was her final warning, and that if she lied to me again, she would be terminated.

Jack Meskunas

CONFIDENTIAL
D0039

# EXHIBIT J

4 February 2007

Memo to file of Mikki Loscalzo

RE: Sasso Deal

Today Mikki met a customer that came in and wanted to purchase a used FLHRS 2005 Road King Custom, and trade in a Yamaha V-Max. I met the customer briefly to discuss and price his trade-in. The customer left a deposit on the bike. After the customer left, I asked Mikki if she notified the customer of the fact that the front fender had been repainted, Mikki said that she had not. I advised Mikki that that is not the way we do business here, and that we are not in the business of "pulling a fast one" or deceiving customers, and that her lack of truthfulness would likely cause us to end up replacing the fender, which would cost us $350.

I explained to Mikki that her repeated mistakes have cost us money on many of her deals, and that this was unacceptable.

Jack Meskunas

CONFIDENTIAL
D0038

# EXHIBIT K

---

Reminder: AOL will never ask you to send us your password or credit card number in an email.        This message has been scanned for known viruses

| | |
|---|---|
| **From:** | pm@nrhd.com |
| **To:** | mcmikki@aol.com |
| **Subject:** | RE: Hello |
| **Date:** | Sat, 3 Mar 2007 10:55 AM |

---

Mikki,

I understand your frustration with the choice you made to leave teaching and venture into a career that was less stabile. But you cannot blame others for that decision; you were not able to succeed in the motorcycle sales business for a variety of reasons. I am really upset that you feel that I am compromising my integrity, when you came to me with complaints about Wayne, I addressed them. Wayne was counseled on his management skills and your complaints were addressed very seriously.

Mikki, I wouldn't lie about what you said in Jacks office. You clearly stated that you felt "losing your job was at least half your fault", I was not instructed to write anything as you claim in your e-mail, I think you are unable to accept your own failure in this business. Not every person is cut out to be a sales person. I have heard that you are a great teacher, and that is something to be very proud of. Your approach to Sales, was in the end, ineffective. You need more than flirting to sell a motorcycle to some people.

As for your comment about "sitting on Jacks lap", I do not remember the incident that you describe, however, I will tell you that you always played your flirty girl routine, anytime you wanted to make points with Jack or any other male. You cannot call your flirting, sexual harassment. Do not use a law that is designed to protect victims of unwanted sexual advances to seek revenge or personal gain. Frivolous or false charges only lessen the impact of those claims that are genuine. YOUR integrity should be re-examined, this accusation that Jack sexually harassed you is just down right false. If I thought that what you are saying were true, I would support you Mikki. I am very much a strong supporter of women's rights. I have to state that you never complained to me that Jack was acting inappropriate or that you felt uncomfortable because of sexual advances or comments. This is why I am shocked by your allegations.

I have discussed my needing a larger work area and an Assistant with you, this is normal business, and I do not feel that this is lack of support, rather lack of budget at this time. This kind of stuff is routine in the business world, and I am capable of standing up for what I need, I am also realistic about a new business and how some sacrifices need to be made at least for the time being. I am a team player, maybe you think that makes me a fool in some way, but I do not feel I am set up for failure. We just have different views on the way business is done and the way we handle ourselves at work. I am sorry that you and I have different opinions about this matter, and I am sorry it has impacted our friendship.

Patti

---

From: mcmikki@aol.com [mailto:mcmikki@aol.com]
Sent: Friday, March 02, 2007 6:17 PM
To: pm@nrhd.com; MCMIKKI@aol.com
Subject: Re: Hello

Dear Patti,

In response to your e-mail on 2/24/07 which I suspect was either written by you or you were instructed to write, I respond:

First of all I never said losing my job was half my fault. That in itself is a lie as we both know. I was never given the full support I needed as a new salesperson. Coupled with inappropriate sexual behavior from Jack and discriminatory harassment from Wayne, I was set up for failure! Just like you. You keep asking for an assistant and bigger office space.....have you gotten it? You also know for a fact that Wayne was never ever seriously disciplined for harassing me.

Your denial that you ever witnessed any sexual harassment against me is startling, as you know you witnessed such behavior on numerous occasions. For example, just one of the many times Jack asked me to sit on his lap and you overheard and you said to me "I guess he'll never ask me to sit on his lap!"

As you should know, this is not because I am interested in money. It is because Jack and Wayne violated federal and state laws prohibiting them from engaging in the unlawful activity outlined in my attorneys letter to Jack. **And being a small company in no way excuses their behavior!**

I think you stated a falsehood in your e-mail when you said that I have put your job in jeopardy and everyone else's in jeopardy. Sometimes we have to stand up and confront unlawful activity. I regret that you can not accept my doing so and are willing to compromise your integrity by denying what you know to be the truth.

You asked me how I could do this to them, why don't you ask them, how they could do this to me?
Then ask yourself how can you condone what they did to me.

Mikki

-----Original Message-----
From: pm@nrhd.com
To: mcmikki@aol.com
Sent: Sat, 24 Feb 2007 9:53 AM
Subject: RE: Hello

Mikki,

**P00180**

I really don't understand why you are attacking Jack. Jack did everything he could to give you an opportunity to succeed, your constant "bumping heads" with Wayne caused you the disharmony in Sales, not Jack. When we sat in Jacks office, when your employment was terminated, you admitted that losing your job was

at least half your fault.

I tried to help you resolve your situation with Wayne, but you kept defying his authority every chance you had, I told you that that was not going to help the situation and you said that you knew, but you couldn't help it.

As far as accusing Jack of Sexual Harassment, where does that come from? You never once mentioned that Jack was ever inappropriate with you. This came a total shock to me and quite frankly to Jack and Denise as well. When you had complained about Wayne, I took you complaint to Jack and Denise and the situation was addressed immediately. It may not have worked out with the termination of Wayne as you had wished, but Wayne was seriously disciplined by both Jack and Denise.

Please remember that you are not going after a city organization or a major company, you are going after a small business owner. In doing so you have put my job and everyone else's here in jeopardy.

I think you need to look deep within and ask yourself if you really believe that Jack sexually harassed you. I never saw it, and you never said it. I saw him give y many chances to learn the Salesperson job, I saw him defend you when you and Wayne had issues, I also saw him struggle with the fact that the job was just no working out and that he was going to have to let you go.

Jack is a good man, and you are way out of line with what I consider a false accusation. Why would you stoop to this level -- are you just interested in money Mikki?

This is wrong Mikki, and I am really disappointed in your decision to take this route.

Patti

---

**From:** mcmikki@aol.com [mailto:mcmikki@aol.com]
**Sent:** Friday, February 23, 2007 5:19 PM
**To:** pm@nrhd.com
**Subject:** Hello

Hi Patti,

I hope I have not made anything uncomfortable for you ay work, that is clearly not my intention.

I hope you understand that I had to take action.

I also want to apologize for not telling you sooner and for saying anything about it on the phone today.

I hope we can maintain our friendship and keep New Roc and this situation out of it.

Mikki

---

<u>Check out the new AOL</u>. Most comprehensive set of free safety and security tools, free access to millions of high-quality videos from across the web, free AOL Mail and more.

---

size=2 width="100%" align=center>

AOL now offers free email to everyone. Find out more about what's free from AOL at <u>AOL.com</u>.

P00181

# EXHIBIT L

## Patricia Massa

**From:**   Patricia Massa [pm@nrhd.com]
**Sent:**   Wednesday, February 28, 2007 12:35 PM
**To:**     'mcmikki@aol.com'
**Subject:** RE: Cobra

Mikki,

COBRA paperwork was mailed out to you today.  Information attached.

Patti

**From:** mcmikki@aol.com [mailto:mcmikki@aol.com]
**Sent:** Wednesday, February 28, 2007 12:08 PM
**To:** pm@nrhd.com
**Subject:** Cobra

Dear Patti,

Please let me know how much I need to write a check out for COBRA and I will get it to you
immediately.

Thank you, Mikki

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

February 28, 2007

Michelle Loscalzo
35 Shady Glen Court # 2H
New Rochelle, NY  10801

Re:  COBRA Continuance of Coverage Election Notice

Dear Michelle:

**This notice contains important information about your right to continue your health care coverage
through NewRoc Motorcycles, LLC.**  Please read the information contained in this notice very carefully.

To elect COBRA continuation coverage, follow the instructions on the next page to complete the enclosed
Election Form and submit it to us.

If you do not elect COBRA continuation coverage, your coverage under the Plan will end on **February 28,
2007** due to:

    **X  End of employment**    ☐ Reduction in hours of employment
    ☐ Death of employee    ☐ Divorce or legal separation
    ☐ Entitlement to Medicare    ☐ Loss of dependent child status

Each person ("qualified beneficiary") in the category(ies) checked below is entitled to elect COBRA
continuation coverage, which will continue group health care coverage under the Plan for up to 18 months.

    **X  Employee or former employee**
    ☐ Spouse or former spouse
    ☐ Dependent child(ren) covered under the Plan on the day before the event that caused
    the loss of coverage
    ☐ Child who is losing coverage under the Plan because he or she is no
    longer a dependent under the Plan

If elected, COBRA continuation coverage will begin on **03-01-2007 and can last until 08-31-2008**.

COBRA continuation coverage will cost **$229.83/month for medical** You do not have to send any payment
with the Election Form.  Important additional information about payment for COBRA continuation coverage
is included in the pages following the Election Form.

If you have any questions about this notice or your rights to COBRA continuation coverage, you should
contact **NewRoc Motorcycles, LLC., 8 Industrial Lane, New Rochelle, NY  10805.**

Sincerely,

**Patti Massa**

EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MICHELLE LOSCALZO,                          :

                          Plaintiff,        :     Civil Action No.

        -against-                           :     COMPLAINT

                                            :

                                            :

NEW ROC HARLEY DAVIDSON AND                 :     PLAINTIFF DEMANDS
BUELL, INC.,                                :     A TRIAL BY JURY

                          Defendant.        :
-----------------------------------------------------------x

ROBINSON

07 CIV. 3046

S.D. OF N.Y.W.P.   2001 APR 16  P 1: 13   FILED U.S. DISTRICT COURT

## I. INTRODUCTORY STATEMENT

1.   Plaintiff Michelle Loscalzo, an unmarried female American citizen, thirty nine
years of age, seeks redress for discrimination on account of her sex, and for sexual
harassment, suffered by her in violation of the Constitution and laws of the United States in her
capacity as an employee of Defendant New Roc Harley Davidson And Buell, Inc.

## II. JURISDICTION AND VENUE

2.   This action is brought and jurisdiction lies pursuant to 42 U.S.C. §§2000e(5) et
seq., 2000e(16), and 28 U.S.C. §§1331 and 1343, this being a suit based upon the
provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 ("Title
VII"), 42 U.S.C. §§2000e-2 et seq. In addition, pursuant to 28 U.S.C. §1367(a), Plaintiff
invokes the Court's supplemental jurisdiction as to pendent New York State claims arising
under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law, Article 15,
§290 et seq.

3.  Venue is proper in this district because Plaintiff's claim for relief arose here and Defendant maintains its office, and is doing business, here.

## III. PARTIES

4.  Plaintiff Michelle Loscalzo ("Plaintiff") is a Caucasian unmarried female American citizen, thirty nine years of age, residing at 35 Shady Glen Court, New Rochelle, New York 10805.

5.  Upon information and belief, Defendant New Roc Harley Davidson And Buell, Inc., a motor cycle sales and service dealership, is a New York corporation or a foreign corporation having substantial contacts with the State of New York, with offices at 8 Industrial Lane, New Rochelle, N.Y. 10805.

## IV. FACTS

6.  Plaintiff was employed by Defendant from November, 2005 to August 21, 2006 on a part time basis as a receptionist, and was employed as a full-time salesperson from August 21, 2006 until her discharge on February 8, 2007.

7.  During her employment, Plaintiff performed her duties satisfactorily, with care and success.

8.  During her employment, Plaintiff was repeatedly (essentially on a daily basis) subjected to numerous lewd and lascivious comments of a sexual nature by John Meskunas, Defendant's President and principal owner, frequently in the presence of other employees, which comments included, but were not limited to, the following:

a.   "You have great tits";

b.   You have the best ass in the place";

2

c.  "You have a great ass;

d.  On an occasion after Plaintiff had had her hair done, Mr. Meskunas asked her "does your carpet match your drapes";

e.  When Plaintiff wore Harley Davidson apparel being sold by Defendant at work, which she was required to do, which apparel was even remotely form fitting, Mr. Meskunas commented "thanks for wearing that today," "come sit on my lap," "that's sexy", "why don't you hug me";

f.  On one occasion, Mr. Meskunas, who was sitting on a motorcycle displayed in the showroom, asked Plaintiff to get on the back seat to see whether it was comfortable and, in order to get onto the seat she was required to hold on to his shoulder, and as she was settling into the seat, Mr. Meskunas made groaning sounds and said "keep going, I'm almost there.";

g.  On another occasion, Mr. Meskunas told Plaintiff he was going on a business trip without his wife and asked that she accompany him.;

h.  Mr. Meskunas also made gender based sexist remarks such as telling Plaintiff that because she was "the girl in the sales department," she should "water the plants", "clean-up", "dust the motorcycles", "get him a soda", and the like;

i.  On another occasion Mr. Meskunas compared the size of Plaintiff's breasts to those of another female employee, saying Plaintiff had large breasts and the other employee did not.

j.  On an occasion, when a customer left the showroom without buying a motorcycle, Mr. Meskunas said to Plaintiff "with tits like that you should be able to sell ice to an eskimo";

9.  Although Plaintiff repeatedly made it clear to Mr. Meskunas that she found his behavior offensive and unwelcome, he persisted therewith essentially on a daily basis.

10.  In addition, Defendant's Sales Manager Wayne Sforza, Plaintiff's immediate supervisor, subjected her to unwarranted criticism, refused to pay her overtime in accordance with Defendant's policy, and interfered with her right to receive sales commissions she had earned because she refused to conform to his stereotypical view of women.  Specifically, as he

3

told Plaintiff on an occasion when one of the other female employees was hugging Mr. Sforza and lavishing her attention on him, "see, if you behaved like this, we wouldn't have any problems."

11.    On several occasions, Plaintiff complained to Defendant's General Manager Patti Massa about Mr. Sforza's behavior, but to no avail.

12.    When Plaintiff was discharged, Mr. Meskunas told her that he couldn't say anything bad about her, but he had told her previously that he might have to fire her because his choice was to fire her as Mr. Sforza didn't like working with her, or to fire Mr. Sforza; and, of course, he chose to discharge Plaintiff.

13.    Upon information and belief, Defendant will now claim that Plaintiff was discharged for poor sales performance and poor results on internet selling tests. Any such claim is totally false; and with respect to internet test results, Plaintiff was told to take said tests without benefit of being provided with the course material, despite her repeated requests to Mr. Meskunas' and Ms. Massa that she be supplied with same.

14.    Defendant's anticipated proffered reason for discharging Plaintiff (unsatisfactory performance) is false and a pretext to discriminate against Plaintiff based upon her sex, and to avoid the consequences of Defendant's sexual harassment of Plaintiff.

15.    Plaintiff has been denied equal terms, conditions and privileges of employment by reason of her female gender, and by reason of being subjected to sexual harassment.

16.    On or about April 3, 2007, the Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue, and Plaintiff thereafter commenced the within action.

4

17.    The acts of Defendant of sexually harassing and then discharging Plaintiff in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 and the NYSHRL have caused Plaintiff to be permanently and irreparably harmed, and damaged and cost her wages, bonuses, savings benefits, insurance coverage, and additional pension benefits, among other losses, as a result of the illegal discrimination.

## V. FIRST CLAIM FOR RELIEF

18.    Plaintiff herewith realleges and incorporates by reference paragraphs "1" through "17" of this Complaint.

19.    As a result of the willful actions of Defendant, Plaintiff has been deprived of employment opportunities and her civil rights in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.

## VI. SECOND CLAIM FOR RELIEF

20.    Plaintiff herewith realleges and incorporates by reference paragraphs "1" through "20" of this Complaint.

21.    As a result of the willful actions of Defendant, Plaintiff has been deprived of employment opportunities and her civil rights in violation of the New York State Human Rights Law.

## VII.. PRAYER FOR RELIEF

WHEREFORE: Plaintiff prays:

A.  Pursuant to the FIRST CLAIM FOR RELIEF against Defendant:

1.  That the Court find and declare that Plaintiff has suffered from acts of sexual harassment and sex discrimination at the hands of Defendant, its agents, servants and employees;

5

2.  That Plaintiff be awarded the back pay she would have earned, together with related monetary benefits and other compensatory damages resulting from Defendant's intentional, willful and malicious conduct, including, but not limited to, damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, had she not been discharged or sexually harassed.

3.  That Plaintiff be awarded punitive damages for Defendant's intentional and willful conduct engaged in with malice and/or reckless indifference to Plaintiff's federally protected rights;

4.  That the Court order such further equitable and injunctive relief as it deems appropriate and necessary to correct the conditions of discrimination complained of herein, including reinstatement and/or front pay;

5.  That Defendant pay Plaintiff's costs of this suit, together with her attorneys' fees and prejudgment interest.

B.  Pursuant to the SECOND CLAIM FOR RELIEF against Defendant:

6.  That the Court find and declare that Plaintiff has suffered from acts of discrimination at the hands of Defendant, its agents, servants and employees;

7.  That Plaintiff be awarded compensatory damages and the back pay she would have earned, together with related monetary benefits, had she not been discharged;

8.  That the Court order such further relief as it deems appropriate and necessary to correct the conditions of discrimination complained of herein, including front pay;

9.  That Defendant pay Plaintiff's costs of this suit, together with reasonable attorney's fees and prejudgment interest; and

6

10.    That Defendant pay Plaintiff Five Hundred Thousand Dollars ($500,000) as and for general damages for pain and suffering and emotional distress, incurred as a result of Defendant's conduct.

## X. DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  White Plains, New York
        April 16,  2007

                                        BERNBACH LAW FIRM PLLC

                                    By:_____
                                        JEFFREY M. BERNBACH (JMB 5131)
                                        Attorney for Plaintiff
                                        245 Main Street, 5th Floor
                                        White Plains, N.Y.  10601
                                        (914) 428-9100

7

# EXHIBIT N



WESTCHESTER NY 105

04 JUN 2007 PM 1 L

New-Roc AD
atth: Patti Massa
8 Industrial Jone
New Rochelle NY. 10805

10805+1204 C011

COBRA Mail
Check for after
Received period
Grace period

Michelle Loscalzo
Apt. 2H
35 Shady Glen Ct.
New Rochelle, NY  10805-1813

# EXHIBIT O

NEWROC H-D

PAGE  05/05

NEW ROC MOTORCYCLES, L L C
8 INDUSTRIAL LN
NEW ROCHELLE NY 10801

**Aetna**

| | |
|---|---|
| INVOICE NUMBER | : 19928792 |
| CUSTOMER NUMBER | : US 10306H-0001 |
| DATE PREPARED | : 09-16-07 |

ATTN:  DENISE MESKUNAS
(914) 633-0331

PAGE    3

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CHARGES FOR | COVERAGE | IN PRIOR MONTHS NOT | PREVIOUSLY BILLED: | | | | | | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 090107 | 090607 | $229.83 | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 080107 | 090607 | 229.83 | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 070107 | 090607 | 229.83 | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 060107 | 090607 | 229.83 | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 050107 | 090607 | 229.83 | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 040107 | 090607 | 229.83 | |
| REINSTAT | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 030107 | 090607 | 229.83 | |
| TERM | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 090107 | 090607 | | $229.83 |
| TERM | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 080107 | 090607 | | 229.83 |
| TERM | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 070107 | 090607 | | 229.83 |
| TERM | 19928792 | 10306H-001-GN01-0010 | BBPL9RJA | LOSCALZO MICHEL | XXXXX0127 | 060107 | 090607 | | 229.83 |
| INVOICE | 19928792 | TOTAL CHARGES FOR COVERAGE IN PRIOR MONTHS NOT PREVIOUSLY BILLED | | | | | | $689.49 | |

INVOICE CONTINUES ON NEXT PAGE

XX0358 (1-03)

Aetna is the brand name used for products and services provided by one or more of the Aetna group of companies.

D 0176