UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

MICHELLE LOSCALZO,                              :

                        Plaintiff,              :        Case No.: 07 CIV 3046
                                                :        (CLB)
                                                :
        - against -                             :
                                                :
NEWROC MOTORCYCLES, LLC                          :
                Defendant.                       :
                                                :
                                                :
-----------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT



**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorney for Defendant NewRoc Motorcycles, LLC*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020



Of Counsel
    Mary Ellen Donnelly

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.   The Parties ............................................................................................... 2
    B.   NewRoc's Policy On Sexual Harassment ............................................... 3
    C.   Plaintiff's Job Performance .................................................................... 4
    C.   Procedural History ................................................................................. 9

ARGUMENT ................................................................................................................. 11

POINT I     NEWROC IS ENTITLED TO SUMMARY JUDGMENT
               ON PLAINTIFF'S RETALITION CLAIMS ................................. 11

    A.   The Standard for Summary Judgment ................................................. 11
    B.   The Applicable Legal Standards and Burden of Proof ........................ 12

POINT II  PLAINTIFF CANNOT STATE A ....................................................... 13
               *PRIMA FACIE* CLAIM OF RETALIATION ............................... 13

    A.   No "Protected Activity" ....................................................................... 13
    B.   Assuming *Arguendo* "Protected Activity" by Plaintiff, Plaintiff cannot
          Establish theNecessary "Casual Connection" Between the Two ........ 15
    C.   NewRoc had Legitimate, Non-Retaliatory Reasons for its Actions ..... 16
    D.   Pretext for Retaliation .......................................................................... 21
    E.   Plaintiff's Problems with COBRA Coverage ...................................... 21

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

## Federal Cases

Clark County School Dist v. Breeden, 532 U.S. 268 (2001) ........................................ 15

Fed. R. Civ. P. 56(c) (1987).......................................................................................... 11

Communications Workers of America, Dist. One v. Nynex Corp., 898 F.2d 887, 889 (2d Cir. 1990) ....................................................................................................................... 22

Herrmann v. Cencom Cable Assocs., 978 F.2d 978 (7th Cir. 1992) .............................22

Hollander v. American Cyanamid Co., 895 F.2d 80 (2d Cir. 1990)............................. 15

Inganamorte v. Cablevision Sys. Corp., 2006 U.S. Dist. LEXIS 67872 (E.D.N.Y. 2006)(Section 296) ........................................................................................................................... 12

James v. New York Racing Ass'n, 233 F.3d 149 (2d. Cir. 2000) ................................. 16

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) ....................... 16

Kemp v. A & J Produce Corp., 2003 U.S. Dist. LEXIS 27426, 29-30 (E.D.N.Y. 2003)............. 12

Lew v. Radiation Dynamics, Inc., 995 F.Supp. 106, 110-111 (E.D.N.Y. 1998). ......... 12

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). ......................................... 12

McMenemy v. City of Rochester, 241 F.3d 279, 282 (2d Cir. 2001).......................... 13

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985)........................ 11

R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) ................................... 11

Raskin v. Wyatt Co., 125 F.3d 55, 64 (2d Cir. 1997) .................................................. 21

Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2nd Cir.1996) ..................... 12

Schnabel v. Abramson, 232 F.3d 83 (2d. Cir. 2000) ................................................. 16

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-08 (1993)........................... 16, 21

Stephens v. SUNY at Buffalo, 11 F.Supp.2d 242, 250 (W.D.N.Y. 1998).................... 21

Torres v. Pisano, 116 F.3d 625 (2d Cir.), cert. denied, 522 U.S. 997 (1997)............. 13

Trans Sport v. Starter Sportswear, 96 F.2d 186, 188 (2d Cir. 1992). .......................... 11

<u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996) ................................. 21

<u>Wilson v. N.Y. City DOT</u>, 2005 U.S. Dist. LEXIS 21620 (S.D.N.Y. 2005) .............................. 12

**Other Authorities**

29 U.S.C. § 1162 (3) ........................................................................................................... 22

42 U.S.C. 2000e *et seq.* ........................................................................................................ 1

New York State Executive Law § 296 ..................................................................................... 1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Putney, Twombly, Hall & Hirson LLP on behalf of Defendant, NewRoc Motorcyles, LLC ("NewRoc"), in support of Defendant's motion for partial summary judgment dismissing the claims of retaliation alleged in Plaintiff's Amended Complaint dated August 21, 2007, (the "Amended Complaint"), pursuant to Rule 56(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1] The Second and Fourth Claim for Relief in Plaintiff's Amended Complaint allege that NewRoc retaliated against Plaintiff in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII") and the New York State Executive Law § 296, by terminating her employment after Plaintiff allegedly asserted allegations of sexual harassment against NewRoc, and discontinuing her health insurance benefits under COBRA. Plaintiff's retaliation claims fail as a matter of law.

Plaintiff alleges that NewRoc retaliated against her for engaging in allegedly protected activity and that she is entitled to recover damages as a result of that retaliation. However, the indisputable documentary and testimonial evidence in this matter demonstrates that NewRoc terminated Plaintiff's employment solely because of Plaintiff's failure to adequately perform her job responsibilities. What is equally clear from the documents and testimony in this matter is that NewRoc's Owner and President, John Meskunas, had no knowledge of any alleged "protected activity" at the time he made the decision to terminate Plaintiff's employment based upon her performance deficiencies. NewRoc terminated Plaintiff's employment solely as a result of Plaintiff's poor performance of her job responsibilities. Even drawing all factual inferences in favor of Plaintiff, her claims for retaliation are patently insufficient and must be dismissed.

---

[1] For the Court's convenience, a copy of Plaintiff's Amended Complaint is annexed to the Affidavit of Mary Ellen Donnelly, sworn to December 7, 2007 ("Donnelly Affidavit"), as Exhibit A.

## STATEMENT OF FACTS

**A.      The Parties**

NewRoc is a Harley Davidson dealership located in New Rochelle, New York.  NewRoc

sells both new and used Harley Davidson motorcycles, as well as other Harley Davidson apparel

and merchandise.  Affidavit of John Meskunas, sworn to December 7, 2007, ("Meskunas Aff."),

at ¶ 4.  NewRoc began operations in November of 2005 and is owned and operated by John

Meskunas.  Id. at ¶ 3.  Plaintiff commenced employment with NewRoc on November 16, 2005,

as a part-time Greeter.  Affidavit of Patricia Massa, sworn to December 7, 2007, ("Massa Aff.")

at ¶ 5.  As a part time Greeter, Plaintiff was scheduled to work primarily on the weekend and was

charged with the responsibility of greeting customers as they entered the dealership.  Id.

Additionally, the Greeter was required to keep the entrance and surrounding area clean and

presentable, including dusting off the motorcycles, cleaning the counters, and performing other

various tasks to ensure the showroom remains presentable.  Meskunas Aff. ¶  5.  Plaintiff

remained in the part-time Greeter position until August 21, 2006.  Amended Complaint ¶ 6.

On August 21, 2006, Plaintiff requested and was offered the position of full-time

Motorcycle Sales Associate at NewRoc.   Id.  At the time that Plaintiff requested the position of

Sales Associate, one of NewRoc's full time salespeople was out on a disability leave of absence

from the dealership.  Since NewRoc was in need of additional salespeople, Mr. Meskunas agreed

to offer Plaintiff the Sales Associate position, despite her inexperience.  Meskunas Aff.¶ 6.

As a Sales Associate, Plaintiff was required to provide prompt, dependable, high quality,

vehicle sales to customers by using current proactive feature benefit sales techniques.  Plaintiff's

specific responsibilities included, but were not limited to: (1) attaining new and used sales quotas

as agreed upon with the Sales Manager; (2) presenting the features of all products to customers

-2-

along with their benefits; (3) maintaining the computerized inventory control system along with net profit objectives which eliminate the possibility of lower than anticipated profits; (3) following procedures to ensure timely and proper completion of all paperwork; (4) following procedures for quick and efficient handling of warranty items; (5) using a common and consistent quotation methodology for vehicle sales, trade-ins and purchases; (6) conducting a road test and pre-delivery inspection prior to delivery to the costumer; (7) ensuring that the showroom floor and motorcycles were clean and suitable for display; and (8) maintaining profit margin objectives for all vehicle sales. Massa Aff. at ¶ 7.  Plaintiff's salary structure as a Sales Associate was $10.00 per hour plus any commissions earned on the sale of motorcycles. Accordingly, Plaintiff's income was directly related to Plaintiff's ability to sell motorcycles. Massa Aff. at ¶ 8.

Wayne Sforza, NewRoc's Sales Manager, was Plaintiff's direct supervisor in the Sales Department.   As Sales Manager, Mr. Sforza was required to supervise the Sales Associates and the overall operation of the Sales Department.  Mr. Sforza also held the dual role of Sales Associate and received a commission for any motorcycles he sold.  Massa Aff. at ¶ 9.  Plaintiff was also supervised indirectly by Mr. Meskunas, President and Owner of NewRoc.  As President and owner of NewRoc, Mr. Meskunas was responsible for overseeing all of the operations of the dealership and ensuring that all employees were adequately performing their respective job responsibilities.  Massa Aff. at ¶ 10.

**B.**     **NewRoc's Policy On Sexual Harassment**

At the time that Plaintiff commenced employment with NewRoc, Plaintiff was provided with a copy of NewRoc's Employee Handbook, which contains NewRoc's Policy against

-3-

Discrimination and Sexual Harassment. Massa Aff. ¶ 5. NewRoc's policy states in relevant

part:

> It is the policy of the Company that any form of harassment or discrimination on
> the basis of race, religion, color, national origin, ancestry, marital status, physical
> handicap, mental condition, age and gender, including sexual harassment
> ("harassment") is prohibited. The Company is committed to maintain its offices
> free of any such harassment and discrimination . . . Any employee who feels he
> or she is being harassed or discriminated against, or who is aware of harassment
> or discrimination, should report it immediately to the President of NewRoc. A
> thorough, objective investigation will be undertaken, without prejudice or
> retaliation against the person making the report. . . *If you feel that you are being
> harassed in any way by another employee or by a customer or vendor, you should
> make your feelings known to your supervisor immediately.* The matter will be
> thoroughly investigated and where appropriate, disciplinary action will be taken.

Massa Aff. Ex. A (emphasis added). All employees at NewRoc received a copy of NewRoc's

Handbook and were familiar with the provisions contained therein.

**C.     Plaintiff's Job Performance**

Immediately upon assuming the Sales Associate position, it became readily apparent that

Plaintiff lacked the skills and knowledge necessary to sell Harley Davidson Motorcycles.

Plaintiff resisted all efforts by Mr. Sforza to assist and train Plaintiff with respect to her job

responsibilities as a Sales Associate. Plaintiff would either completely ignore Mr. Sforza's

directives regarding her job responsibilities or appeal directly to Mr. Meskunas to change the

directives of her immediate supervisor. Massa Aff. ¶ 11.

Plaintiff complained on numerous occasions both to Mr. Meskunas and Patricia Massa,

Manager of Human Resources for NewRoc, that she did not like Mr. Sforza's management style.

Plaintiff acknowledged that she refused to follow Mr. Sforza's instructions and went out of her

way to antagonize him. Massa Aff. ¶ 12. Plaintiff would also repeatedly arrive for work late,

despite being counseled by Mr. Sforza about her tardiness. Over the five month period Plaintiff

was employed by NewRoc as a Sales Associate, she reported to work late on at least 49 different workdays. Massa Aff. ¶ 13.

Plaintiff also failed to complete the training courses available to her online through the Harley Davidson training cite. Both Mr. Meskunas and Mr. Sforza signed Plaintiff up for numerous training courses, such as: C.U.S.T.O.M Motorcycle Sales, Selling Skills I, It's Your Loss, VRSC Sales and Competitive, Knowledge, Understanding the Customer – Unit 1, The Buell Opportunity, Selling Skills II, Make Mine Genuine, Selling Skills for the Sportster Family, VRSC Sales and Competitive Knowledge, 2007 Model Sales Walk-Around, Getting Yourself Read – Unit 2, Customer Focused Selling 1 & 2, Customer Focused Selling 3 & 4, Customer Focused Selling – 5 & 6, Customers for Life – 1 & 2, Customers for Life – 3, 4, & 5, Introduction to the V-Rod. Out of 18 courses, Plaintiff only completed and passed 4 of the courses. Massa Aff. ¶ 14.

As a result of Plaintiff's lack of selling skills and poor work performance, Plaintiff received numerous counselings and warnings about her job performance. Within a five month period, Plaintiff received seven written warnings about her job performance. Specifically, on September 3, 2006, Plaintiff received a written warning from Mr. Sforza for lateness and attendance. The warning stated:

> [Plaintiff] came in 27 minutes late wearing sneakers after verbal warning
> regarding tardiness and appropriate business attire had been given one day prior.

Plaintiff acknowledged receipt of this warning. A copy of the September 3, 2006 warning is annexed to the Massa Aff. as Exhibit E.

On September 21, 2006, Plaintiff received a second written warning from Mr. Sforza for insubordination. Plaintiff had been instructed not to deliver motorcycles to the customer while

her manager was not present. Plaintiff had ignored this instruction and delivered a motorcycle to a customer while her Manager was off from work. Plaintiff again acknowledged receipt of this warning. A copy of the September 21, 2006 warning is annexed to the Massa Aff. as Exhibit F.

Despite counseling, Plaintiff failed to improve in the performance of her job responsibilities. On December 20, 2006, Plaintiff received another written warning from Mr. Sforza, for failure to adhere to Sales Department Policies and Procedure. Plaintiff refused to sign the warning. A copy of the December 20, 2006 warning is annexed to the Massa Aff. as Exhibit G.

On January 5, 2007, Plaintiff received an additional warning for failure to properly process deal paperwork and a customer deposit. Apparently, Plaintiff had accepted a deposit from a customer for the purchase of a motorcycle and failed to properly log the deposit. The customer then returned to the dealership to discuss his purchase. Plaintiff was not present at the time and Mr. Sforza could not confirm that the customer had actually already placed a deposit on the motorcycle. Although the customer's deposit receipt was eventually located in the deal folder, Plaintiff's improper conduct had raised concerns both within NewRoc and with the customer about Plaintiff's ability to perform her job responsibilities in an appropriate manner. A copy of the January 5, 2007 warning is annexed to the Massa Aff.as Exhibit H.

On January 22, 2007, Plaintiff received yet another warning for failure to follow proper procedure. Specifically, Mr. Sforza counseled Plaintiff about removing chairs from the business manager's or the sale manager's office and failing to return the chairs to the office was she completed her sale. Plaintiff had been instructed on numerous occasions to follow proper procedures and conduct in the sales department. Despite such instruction, Plaintiff continued to ignore Mr. Sforza's instruction. *See* Massa Aff. Exhibit I.

-6-

Despite the numerous counseling and warnings received by Plaintiff, Plaintiff's job performance still did not improve. On January 27, 2007, Plaintiff received a verbal warning from Mr. Meskunas for failing to disclose information relevant to a motorcycle trade-in. Plaintiff had told Mr. Meskunas that the customer had been offered $14,200 for his motorcycle trade-in, and that Mr. Sforza had arbitrarily changed the offer to $13,500. In reality, however, the customer had refused the initial offer of $14,200 for his trade in and attempted to sell his motorcycle on EBAY. The customer had been unable to sell his motorcycle and returned to NewRoc two months later. As a result of the delay, the new book value on the motorcycle had declined to $13,500. Plaintiff failed to disclose the string of events to Mr. Meskunas. Mr. Meskunas advised Plaintiff that this was her final warning and if she lied to him again she would be terminated. A copy of the January 27, 2007 warning is annexed to the Massa Aff. as Exhibit J.

Plaintiff was again counseled on February 4, 2007, by Mr. Meskunas for dishonesty in connection with a motorcycle sale. Plaintiff had met with a customer regarding the sale of a motorcycle. The customer left a deposit on the motorcycle and Plaintiff failed to disclose to him the fact that the front fender had been repainted. Mr. Meskunas advised Plaintiff that NewRoc was not in the business of deceiving their customers and that Plaintiff's lack of truthfulness would likely result in NewRoc replace the fender at a cost around $350. Mr. Meskunas explained to Plaintiff that her repeated mistakes on many of her deals cost NewRoc money. Meskunas reiterated that Plaintiff was simply failing to adequately perform her job responsibilities. A copy of the February 4, 2007 warning is annexed to the Massa Aff. as Exhibit K.

On February 7, 2007, as a result of Plaintiff's poor job performance and dishonesty, Mr. Meskunas decided that he had no alternative but to terminate Plaintiff's employment with NewRoc. Ms. Massa confirmed with Mr. Meskunas the numerous counselings Plaintiff had received. On February 8, 2007, Mr. Meskunas and Ms. Massa met with Plaintiff and advised her that her employment was being terminated as a result of her poor job performance. Plaintiff did not appear to be surprised about the decision and stated that she was aware that her termination was more than half of her fault. Massa Aff. ¶ 23; Meskunas Aff. ¶ 18.

Plaintiff then met with Ms. Massa separately to discuss her terminal benefits. Ms. Massa advised Plaintiff of her COBRA rights and explained that she was eligible for COBRA benefits. Ms. Massa also provided Plaintiff with the necessary paperwork to receive her benefits. Massa Aff. ¶ 24.

On February 20, 2007, NewRoc received a letter from an attorney acting on behalf of Plaintiff advising NewRoc that Plaintiff was asserting a claim against NewRoc for sexual harassment. At no time during the 15 month period that Plaintiff was employed by NewRoc had she ever complained to anybody about any alleged sexual harassment. Massa Aff. ¶ 25.

On February 23, 2007, Plaintiff contacted Ms. Massa by telephone regarding her claims against NewRoc. Ms. Massa advised Plaintiff that she was shocked by her allegations. Plaintiff then sent an email to Ms. Massa apologizing for not having said anything sooner about her claims against NewRoc. Ms. Massa responded, again advising Plaintiff that she was shocked and disgusted by Plaintiff's fabricated allegations. A copy of the email exchange is annexed to the Massa Aff. as Exhibit L.

Plaintiff again contacted Ms. Massa by electronic mail on February 27, 2007, and requested that the COBRA forms be emailed to her. A copy of Plaintiff's email is annexed to the

Massa Aff. as Exhibit M.  Ms. Massa again provided Plaintiff with the appropriate COBRA forms.

**C.    Procedural History**

On March 5, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation.  (Donnelly Aff. 5.)  On April 3, 2007, the EEOC issued Plaintiff a Right to Sue letter.  (Donnelly Aff. 6.)

On April 14, 2007, NewRoc received Plaintiff's completed COBRA forms along with an undated check for the continuation of her medical insurance.  Shortly thereafter, NewRoc received notification from the bank that they would not negotiate Plaintiff's undated COBRA check.  NewRoc returned the check to Plaintiff and requested that she date it so that it could be resubmitted.  A few days later, NewRoc received Plaintiff's dated check and submitted it to the Bank of American for deposit.  Based upon Plaintiff's payment, Plaintiff's health insurance benefits were continued under COBRA through April 30, 2007.  Massa Aff. ¶ 29.

On April 16, 2007, Plaintiff commenced this action in United States District Court, Southern District of New York, by filing a Summons and Complaint ("Complaint").  Plaintiff's initial Complaint alleged discrimination based on her sex and sexual harassment pursuant to Title VII AND Section 296.  On May 24, 2007, NewRoc filed an answer ("Answer") denying the material allegations in the Complaint in the entirety.  Donnelly Aff. Ex. 7.

Since Plaintiff had only submitted payment to NewRoc for COBRA benefits through April 31, 2007, Plaintiff was required to submit a COBRA check to NewRoc by May 1, 2007 in order to continue her health insurance benefits past April 31, 2007.  NewRoc did not receive any check from Plaintiff for continuation of her health insurance under COBRA by May 1, 2007. COBRA permits a thirty (30) day grace period for payment to be made for continuation of

benefits. Accordingly, Plaintiff had until June 1, 2007, to submit her payment to me. By June 1,

2007, NewRoc still had not received Plaintiff's payment for her COBRA benefits. Plaintiff's

health insurance coverage was discontinued as of May 1, 2007, as a result of Plaintiff's

nonpayment. Massa Aff. ¶ 32.

On July 16, 2007, NewRoc learned for the first time that the insurance company had

erroneously advised Plaintiff that her health insurance coverage had ended as of February 28,

2007. After reviewing the insurance bills, NewRoc immediately contacted the health insurance

company to correct this error. On September 9, 2007, NewRoc received notification from the

health insurance company that the error had been corrected. Massa Aff. ¶ 33.

On August 21, 2007, Plaintiff filed an Amended Complaint alleging that NewRoc

discriminated against and harassed Plaintiff on the basis of her sex, in violation of Title VII.

Amended Complaint at ¶ 1, 2. Plaintiff also alleges that she was unlawfully terminated in

retaliation for complaining about the alleged sexual harassment and discrimination, and for

seeking legal advice regarding redress for the unlawful treatment to which she was subjected.

Plaintiff's Amended Complaint also alleges that NewRoc failed to provide medical coverage for

Plaintiff pursuant to COBRA was in retaliation for Plaintiff's commencement of this action

against NewRoc. Amended Complaint at ¶ 25. On September 11, 2007, NewRoc filed an

Amended Answer denying the material allegations of the Amended Complaint in the entirety.

Donnelly Aff. Ex. 2.

## ARGUMENT

### POINT I

### NEWROC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALITION CLAIMS

**A.      The Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c) (1987).  Summary judgment should be granted where, upon all the papers and proof submitted, the non-moving party has failed to establish the existence of any genuine issue of material fact.  The nonmoving party must provide "concrete particulars," rather than merely asserting "a conclusion without supplying supporting arguments or facts" to show that there is a genuine issue of fact which would preclude summary relief.  *See*, R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984).  A motion will not be defeated merely on the basis of conjecture or surmise. Trans Sport v. Starter Sportswear, 96 F.2d 186, 188 (2d Cir. 1992).

Summary judgment is appropriate in employment discrimination cases as an effective means of disposing of meritless and costly litigation.  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985).  This is particularly applicable given the ease with which employment discrimination suits may be brought and the energy and expense required to defend such actions.  Id. at 998.

> [T]he salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - apply no less to discrimination cases than to commercial or other areas of litigation.

-11-

Id.; *see also* Lew v. Radiation Dynamics, Inc., 995 F.Supp. 106, 110-111 (E.D.N.Y. 1998).

**B.    The Applicable Legal Standards and Burden of Proof**

Plaintiff's Complaint  alleges that NewRoc retaliated against Plaintiff for engaging in

protected activity in violation of Title VII and Section 296, respectively.  "The burden a plaintiff

bears in proving a claim under Title VII follows the three step burden-shifting analysis of

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  The burden shifting analysis

developed in McDonnell Douglas is well established in the Second Circuit and applies to cases

arising under Title VII and Section 296.  Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170,

1177 (2nd Cir.1996)(Title VII and SHRL claims analyzed under same standard); Inganamorte v.

Cablevision Sys. Corp., 2006 U.S. Dist. LEXIS 67872 (E.D.N.Y. 2006)(Section 296); Wilson v.

N.Y. City DOT, 2005 U.S. Dist. LEXIS 21620 (S.D.N.Y. 2005) (SHRL claims will be

considered pursuant to the relevant Title VII standards).

> To avoid summary judgment on a retaliation claim, the plaintiff must
> satisfy the McDonnell-Douglas burden of demonstrating a prima facie
> case of retaliation. The defendant then has the burden of pointing to
> evidence that there was a legitimate, non-retaliatory reason for the
> complained of action. If the defendant meets its burden, the plaintiff
> must demonstrate that there is sufficient potential proof for a
> reasonable jury to find the proffered legitimate reason merely a pretext
> for impermissible retaliation.

Kemp v. A & J Produce Corp., 2003 U.S. Dist. LEXIS 27426, 29-30 (E.D.N.Y. 2003).

As fully demonstrated below, Plaintiff cannot submit any probative evidence, which

would support her claim of retaliation.  Rather, the pleadings, deposition testimony and

documentary evidence in this case conclusively demonstrate that NewRoc did not discriminate or

retaliate against Plaintiff, but instead gave her every opportunity to successfully perform her

duties as a salesperson. Plaintiff simply cannot demonstrate that NewRoc retaliated against her in violation of Title VII or Section 296.

**POINT II**

**PLAINTIFF CANNOT STATE A**
***PRIMA FACIE* CLAIM OF RETALIATION**

In order to state a *prima facie* claim of retaliation under Title VII, Section 296 and 42 Plaintiff must demonstrate: (1) participation in a protected activity known to NewRoc; (2) an employment action disadvantaging Plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Torres v. Pisano, 116 F.3d 625 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997). The employer can rebut the presumption by offering legitimate, non-retaliatory reasons for its actions. Van Zant v. Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996). The burden then shifts to the Plaintiff to demonstrate that those reasons are merely pretextual. St. Mary's Honor Center v. Hicks, 509 U.S. at 506-507. The indisputable facts in this case, supported by the documentary evidence, demonstrate that Plaintiff cannot state a claim for retaliation.

**A.    No "Protected Activity"**

Plaintiff cannot demonstrate that she participated in any protected activity known to NewRoc within the meaning of Title VII. "Title VII prohibits an employer from 'discriminating against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" McMenemy v. City of Rochester, 241 F.3d 279, 282 (2d Cir. 2001) (quoting 42

-13-

U.S.C. § 2000e-3(a)).  The documentary evidence in this matter demonstrates that NewRoc did

not at any time retaliate against Plaintiff for engaging in any alleged "protected activity."

Plaintiff cannot demonstrate that anyone at NewRoc had knowledge of any alleged

"protected activity" prior to the termination of Plaintiff's employment.  Although Plaintiff

alleges in her Amended Complaint and her deposition testimony that she complained to Ms.

Massa about sexual harassment in the workplace and advised Ms. Massa that she had consulted

an attorney regarding her complaints, Plaintiff acknowledged during her deposition testimony

that she never complained to Mr. Meskunas about any allegedly inappropriate conduct, nor did

she advise Mr. Meskunas that she had consulted with an attorney.  Plaintiff's Tr. ¶ 275.  Mr.

Meskunas testified that he was the individual who made the final decision to terminate Plaintiff's

employment with NewRoc.  Meskunas Tr. ¶ 121.  Mr. Meskunas further testified that he had no

knowledge of any complaints made by Plaintiff to Ms. Massa about his conduct at the time that

he made the decision to terminate Plaintiff's employment.  Meskunas Tr. ¶ 89-90.  Mr.

Meskunas also testified that he had no knowledge that Plaintiff had consulted an attorney at the

time he made the decision to terminate Plaintiff's employment.  Meskunas Tr. ¶ 89-90.  Plaintiff

has not and cannot demonstrate that at the time Mr. Meskunas made the decision to terminate

Plaintiff's employment, Mr. Meskunas had any knowledge of any alleged protected activity.

Absent such a showing by Plaintiff, Plaintiff cannot sustain her claim of retaliation.

Further, although Plaintiff asserts that she advised Ms. Massa about her complaints of

harassment, as well as her consultation with an attorney regarding those complaints, such

allegation is not supported by the documentary evidence in this matter.  Not only did Ms. Massa

testify that Plaintiff never complained to her about sexual harassment or informed her about any

purported consultation with an attorney prior to the termination of her employment, Plaintiff's

own email to Ms. Massa supports Ms. Massa's testimony. By email dated February 23, 2007,

Plaintiff specifically apologizes to Ms. Massa for "not telling [her] sooner and for saying

anything about it on the phone today. I hope we can maintain our friendship and keep NewRoc

and this situation out of it." Massa Aff. Ex. L. Based upon the testimony and documentary

evidence in this matter, Plaintiff cannot demonstrate that NewRoc had knowledge of any

"protected activity" prior to the termination of her employment.

**B.**     **Assuming *Arguendo* "Protected Activity" by Plaintiff, Plaintiff cannot
Establish the Necessary "Casual Connection" Between the Two**

      Even assuming that Plaintiff was engaged in protected activity, Plaintiff cannot establish

a causal connection between Plaintiff's alleged protected activity and NewRoc's termination of

her employment. The adverse employment action experienced by Plaintiff occurred only after

she had been repeatedly counseled for her poor job performance. The termination of Plaintiff's

employment was a direct consequence of Plaintiff's own misrepresentation to the owner of

NewRoc. Plaintiff is unable to identify with any specificity, when, if ever, she complained about

any alleged harassment to Ms. Massa or when she allegedly reported consultation with an

attorney to Ms. Massa. Plaintiff testified that she consulted with the attorney sometime in

December, 2006 or January 2007. A lapse of time between the alleged protected activity and any

adverse employment action, even a one or two month lapse in time, indicates that there is no

causal link. Clark County School Dist v. Breeden, 532 U.S. 268 (2001); *see also* Hollander v.

American Cyanamid Co., 895 F.2d 80 (2d Cir. 1990) (summary judgment granted where three

months lapsed between notice of plaintiff's complaint and adverse employment action). Plaintiff

has quite simply failed to adduce any evidence of a causal connection between the termination of

her employment and the alleged protected activity beyond her own allegations. Absent sufficient

-15-

evidence of a causal connection, Plaintiff cannot establish a prima facie case of retaliation. *See* Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (requiring, *inter alia*, evidence of "a causal connection between the protected activity and the adverse employment action" in order to establish a prima facie case of retaliation). NewRoc terminated Plaintiff's employment because she was unable to perform her job responsibilities. NewRoc's action simply was not retaliatory against Plaintiff.

**C.      NewRoc had Legitimate, Non-Retaliatory Reasons for its Actions**

Even assuming, *arguendo*, that Plaintiff could make out a *prima facie* case of retaliation, NewRoc has articulated legitimate, non-pretextual reasons for Plaintiff's termination, *i.e.*, poor job performance and misrepresentation of the performance of those responsibilities. The record is bereft of *any* evidence to establish that the real reason for NewRoc's actions was unlawful discrimination or retaliation for protected activity. St. Mary's Honor Center v. Hicks, 509 U.S. at 507-508; James v. New York Racing Ass'n, 233 F.3d 149 (2d. Cir. 2000); Schnabel v. Abramson, 232 F.3d 83 (2d. Cir. 2000). Rather, the record is replete with evidence of Plaintiff's poor job performance.

Plaintiff's inability to perform her job responsibilities became apparent immediately upon her assumption of the Sales Associate position. Plaintiff lacked the skills and knowledge necessary to sell Harley Davidson Motorcycles. Plaintiff testified that she was qualified to sell motorcycles simply because she was a rider for eight years. Plaintiff's Tr. ¶ 217. Such a statement is evidence not only of Plaintiff's lack of experience and knowledge with respect to the sale of motorcycles, but her ignorance with respect to the responsibilities of her position. An automobile salesperson is not to be an automobile salesperson simply because he or she has been driving since the age of 16. It is not surprising based upon Plaintiff's testimony that Plaintiff did

-16-

not put any effort into improving her performance. Rather, Plaintiff relief on Mr. Meskunas to smooth over and remedy any deficiencies in her job performance. Massa Aff. ¶ 11; Meskunas Aff. ¶ 10.

It is also indisputable that Plaintiff repeatedly arrived late for work, despite being counseled on her tardiness by Mr. Sforza and Mr. Meskunas on numerous occasions. In the five month period Plaintiff was employed by NewRoc as a Sales Associate, she reported to work late on at least 49 different workdays. Massa Aff. at ¶ 12. As a Sales Associate, it was crucial for Plaintiff to arrive at work on time and prepared to work. Plaintiff should have been at work before the arrival of any customers. Instead, Plaintiff was chronically late for her position. Plaintiff's inability to be at work on time is another example of Plaintiff's lack of dedication to her job and overall poor job performance.

Plaintiff also showed her lack of dedication to her job through her refusal to complete the training courses available to her through Harley Davidson's online website. Due to Plaintiff's demonstrated inexperience as a salesperson and lack of knowledge of the Harley Davidson product line, Mr. Meskunas and Mr. Sforza repeatedly requested that Plaintiff take the Harley Davison training courses. Both Mr. Meskunas and Mr. Sforza signed Plaintiff up for numerous training courses, such as: C.U.S.T.O.M Motorcycle Sales, Selling Skills I, It's Your Loss, VRSC Sales and Competitive, Knowledge, Understanding the Customer – Unit 1, The Buell Opportunity, Selling Skills II, Make Mine Genuine, Selling Skills for the Sportster Family, VRSC Sales and Competitive Knowledge, 2007 Model Sales Walk-Around, Getting Yourself Read – Unit 2, Customer Focused Selling 1 & 2, Customer Focused Selling 3 & 4, Customer Focused Selling – 5 & 6, Customers for Life – 1 & 2, Customers for Life – 3, 4, & 5, Introduction to the V-Rod. Plaintiff not only failed to take the majority of the training courses,

-17-

but she only completed and passed four of the courses for which she was registered. Massa Aff. at ¶ 14. In fact, during her deposition testimony, Plaintiff demonstrated her complete lack of knowledge with respect to Harley Davidson motorcycles when she was unable to define or identify terms standard in the industry. Plaintiff's Tr. ¶ 188-189.

As a result of Plaintiff's lack of selling skills and poor work performance, Plaintiff received numerous counselings and warnings about her job performance. Even with continuous counselings from Mr. Sforza, Mr. Meskunas and Ms. Massa, Plaintiff failed to demonstrate that she learned from her mistakes. Plaintiff did not show any demonstrated effort to improve in her performance. Within a five month period, Plaintiff received seven warnings about her job performance. Specifically, on September 3, 2006, Plaintiff received a written warning from Mr. Sforza for lateness and attendance. The warning stated that Plaintiff "came in 27 minutes late wearing sneakers after verbal warning regarding tardiness and appropriate business attire had been given one day prior." Massa Aff. at ¶ 15.

On September 21, 2006, Plaintiff received a second written warning from Mr. Sforza for insubordination. Plaintiff had been instructed not to deliver motorcycles to the customer while her manager was not present. Plaintiff had ignored this instruction, and delivered a motorcycle to a customer while the Manager was off from work. Massa Aff. at ¶ 16.

On December 20, 2006, Plaintiff received another written warning from Mr. Sforza, for failure to adhere to Sales Department Policies and Procedure. Massa Aff. at ¶ 17. On January 5, 2007, Plaintiff received an additional warning for failure to properly process deal paperwork and a customer deposit. Apparently, Plaintiff had accepted a deposit from a customer for the purchase of a motorcycle and failed to properly log the deposit. The customer then returned to the dealership to discuss his purchase. Plaintiff was not present at the time and the Sales

-18-

Associates working that day could not confirm that the customer had actually already placed a deposit on the motorcycle. Although the customer's deposit receipt was eventually located in the deal folder, Plaintiff's improper conduct had raised concerns both within NewRoc and with the customer about Plaintiff's ability to perform her job responsibilities in an appropriate manner. Massa Aff. at ¶ 18.

Plaintiff also continuously antagonized Mr. Sforza and repeatedly refused to obey his direct instructions. On January 22, 2007, Mr. Sforza counseled Plaintiff regarding her failure to follow proper procedure. Mr. Sforza had previously instructed Plaintiff not to remove items from either the business manager's or the sale manager's office. Plaintiff had borrowed a chair from Mr. Sforza's office failed to return the chair before she left for the day. Mr. Sforza discussed with Plaintiff the numerous times she had been instructed about proper procedures and conduct for the sale department. Mr. Sforza expressed his exasperation that Plaintiff continued to ignore his instruction. Massa Aff. ¶ 19.

Plaintiff's job performance still did not improve despite the repeated warnings and counselings. On January 27, 2007, Plaintiff received a verbal warning from Mr. Meskunas, for failing to disclose information relevant to a motorcycle trade-in. Plaintiff reported to Mr. Meskunas that a customer had been offered $14,200 for his motorcycle trade-in and that Mr. Sforza had arbitrarily changed the offer to $13,500. In fact, the customer had refused the initial offer of $14,200 and attempted to sell his motorcycle himself on EBAY. The customer was unable to sell the motorcycle and returned to NewRoc two months to trade in the motorcycle. At that time, the book value on the motorcycle was $13,500. Plaintiff deliberately failed to disclose to Mr. Meskunas the correct sequence of events. Mr. Meskunas advised Plaintiff that he would

not tolerate any misrepresentations and that if she lied to him again her employment would be terminated.  Massa Aff. ¶ 20; Meskunas Aff. ¶ 13.

Mr. Meskunas counseled Plaintiff again on February 4, 2007, for dishonesty in connection with a motorcycle sale.  Plaintiff had met with a customer regarding the sale of a motorcycle.  The customer left a deposit on the motorcycle.  At the time of the transaction Plaintiff failed to disclose to the customer that front fender of the motorcycle had been repainted.  Mr. Meskunas advised Plaintiff that NewRoc was not in the business of deceiving the customers.  Mr. Meskunas further advised Plaintiff that her lack of truthfulness would likely result in NewRoc replacing the fender at a cost around $350.  Mr. Meskunas explained to Plaintiff that her repeated mistakes on many of her deals cost NewRoc money. Massa Aff. at ¶ 21; Meskunas Aff. ¶ 15.

It is readily apparent that long before Plaintiff claims to have complained about sexual harassment in the workplace, Plaintiff experienced numerous and significant problems with her job performance.  It is equally apparent that NewRoc gave Plaintiff numerous opportunities to improve upon her performance.  Plaintiff did not take advantage of those opportunities.  Rather, Plaintiff continued to demonstrate inappropriate work attitudes and conduct.  It is Plaintiff's lack of regard for her position and respect for her supervisor that resulted in the termination of her employment.  NewRoc's decision to terminate Plaintiff's employment was solely the result of Plaintiff's sub par performance at work and her demonstrated inability to sell motorcycles.  Plaintiff acknowledged this shortcoming during her termination meeting when she stated that she was aware that her termination was more than half of her fault.  Massa Aff. at ¶ 23; Meskunas Aff. ¶ 18.  By Plaintiff's own testimony, she did not assert any allegations of harassment or retaliation during the February 8, 2007 meeting.  NewRoc has more than

-20-

demonstrated that it had a legitimate, non-retaliatory motive for terminating Plaintiff's employment.

**D.       Pretext for Retaliation**

To defeat Defendant's motion, Plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason for the discharge." Stephens v. SUNY at Buffalo, 11 F.Supp.2d 242, 250 (W.D.N.Y. 1998) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)). *See also* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-08 (1993). "[A] plaintiff resisting summary judgment must raise a genuine issue of material fact concerning whether the employer's proffered reason was pretextual and whether the true reason for the adverse employment decision was more likely than not the illegal discrimination alleged by the plaintiff." Raskin v. Wyatt Co., 125 F.3d 55, 64 (2d Cir. 1997). Plaintiff is unable to produce any evidence that her termination was in retaliation for any protected activity. Accordingly, Defendant should be entitled to summary judgment on Plaintiff's claim of retaliation.

**E.       Plaintiff's Problems with COBRA Coverage**

In her Amended Complaint, Plaintiff also asserts a claim that her COBRA coverage had been terminated in retaliation for the filing of an action against NewRoc. Plaintiff's retaliation claims with respect to her COBRA coverage are equally without merit. Plaintiff failed to make timely payments as required under COBRA. Accordingly, NewRoc cannot be held responsible for the termination of Plaintiff's COBRA coverage.

Pursuant to the COBRA regulations, which were provided to Plaintiff at the time of the termination of her employment, in order to continue coverage Plaintiff was required to make

payments by the first of every month.  COBRA allows a 30-day grace period for receipt of

payments.  COBRA does not, however, require any extension of the 30 day grace period.  If

payments are not made within that period of time, such payments are late and will not be

sufficient to continue COBRA coverage.  *See* 29 U.S.C. § 1162 (3).  Court's have consistently

found that plaintiffs are not entitled to continued COBRA coverage if they fail to comply with

the requirements of their health plans and submit their payments on time.  *See* Communications

Workers of America, Dist. One v. Nynex Corp., 898 F.2d 887, 889 (2d Cir. 1990) (COBRA

permits health plans to require the timely payment of a premium for such continuation coverage.)

Accordingly, an employer will not be held liable for denial of COBRA coverage if such denial is

based upon an employee's nonpayment.

　　　NewRoc's COBRA policy specifically states that continuation coverage will be

terminated before the end of the maximum period if "any required premium is not paid in full *on*

*time*.  The policy further provides that if an employee failed "to make a periodic payment before

the end of the grace period for that coverage period, [the employee] *will lose all rights to*

*continuation coverage under the plan*." (emphasis added).  Donnelly Aff. Ex. 5.  Herrmann v.

Cencom Cable Assocs., 978 F.2d 978 (7th Cir. 1992) (Court granted summary judgment for the

defendant on the ground that the plaintiff had failed to tender her premium for the COBRA

coverage within the statutory deadline); Communications Workers of America, 898 F.2d at 889

(COBRA also provides that continuation coverage will end on "the date on which coverage

ceases under the plan by reason of a failure to make timely payment of any premium.")  Finally,

the policy forewarns policyholders that the provider will not send periodic notices of payments

due for these coverage periods. Donnelly Aff. Ex. 5;  29 U.S.C. §§ 1162(2)(C). Communications

Workers of America, 898 F.2d at 889 ("COBRA regulations . . . state that continuation coverage

ceases on "the first day *for which* timely payment is not made." ).  Plaintiff was aware of these procedures and even assured Ms. Massa that she would make sure to have the payments to NewRoc by the first of every month.  Donnelly Aff. Ex. 8.  Thus, as Plaintiff was aware of the need to submit timely payments, but still failed to do so, she can not attempt to now hold NewRoc liable for her failure to comply with COBRA requirements.

At the time Plaintiff elected COBRA, she submitted payment to NewRoc sufficient to continue her health insurance benefits under COBRA through April 30, 2007. Massa Aff. ¶ 29.  Since Plaintiff had only submitted payment for COBRA benefits through April 31, 2007, in order to continue her health insurance benefits past April 31, 2007, Plaintiff was required to submit a COBRA check by May 1, 2007.  NewRoc did not receive any check from Plaintiff for continuation of her health insurance under COBRA by May 1, 2007. Massa Aff. ¶ 31.  Since COBRA permits a thirty (30) day grace period for payment to be made for continuation of benefits, Plaintiff had until June 1, 2007, to submit her payment to NewRoc.  By June 1, 2007, NewRoc had still had not received Plaintiff's payment for her COBRA benefits.  Plaintiff's health insurance coverage was discontinued as of May 1, 2007, as a result of Plaintiff's nonpayment.  Massa Aff. ¶ 32.  On June 6, 2007, Ms. Massa received an unstamped envelope from Plaintiff, postmarked June 4, 2007, presumably containing Plaintiff's May 1, 2007 check for COBRA benefits.  However, since receipt of such check was beyond the 30 day grace period for payment provided by COBRA, Ms Massa did not open the envelope, nor was any check deposited.  Id.  As Plaintiff was aware that her payments had to be made within 30 days after the first day of the coverage period and failed to do so, Plaintiff cannot now try to hold NewRoc responsible for the termination of her health insurance benefit.

Plaintiff also cannot state a claim that NewRoc refused her COBRA coverage in retaliation for Plaintiff's filing of the instant action.  On July 16, 2007, NewRoc discovered that the insurance company had erroneously advised Plaintiff that her health insurance coverage had ended as of February 28, 2007.  After reviewing the insurance bills, NewRoc immediately contacted the health insurance company to correct this error.  On September 9, 2007, NewRoc received notification from the health insurance company that the error had been corrected. Massa Aff. ¶ 33.  Plaintiff cannot state a claim against NewRoc for the insurance company's error.

It is readily apparent from a review of the facts of this matter that Plaintiff's employment was not terminated in retaliation for any allegedly protected activity.  It is equally apparent that Plaintiff was not refused COBRA coverage, nor was such coverage cancelled in retaliation for Plaintiff's commencement of this action against NewRoc.  All appropriate paperwork was submitted to the insurance company for continuation of Plaintiff's coverage.  Upon learning that the insurance company had erroneously discontinued Plaintiff's insurance coverage as of February 28, 2007, NewRoc immediately contacted the insurance company to rectify that error. NewRoc did not retaliate against Plaintiff in connection with her COBRA coverage.

-24-

## CONCLUSION

For all the foregoing reasons, this Court should grant NewRoc's motion for summary judgment dismissing the Complaint in its entirety and award NewRoc such other and further relief, including costs and attorneys' fees, as the Court deems just and proper.

Dated: New York, New York
      December 7, 2007

*Mary Ellen Donnelly*

Mary Ellen Donnelly (MD 4396)
**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

*Attorneys for Defendant*
*NewRoc Motorcycles LLC*

## CERTIFICATE OF SERVICE

The undersigned, a member of the Bar of this Court, hereby certifies that she caused a

true and accurate copy of the foregoing Memorandum of Law in Support of Defendant's Motion

to Dismiss to be served via electronic filing and overnight mail on December 7, 2007 upon:

Jeffrey M. Bernbach
Attorney for Plaintiff
245 Main Street, 5th Floor
White Plains, New York, NY 10601

Mary Ellen Donnelly (MD 4396)
**PUTNEY, TWOMBLY HALL & HIRSON, LLP**
*Attorneys for Defendant,*
*NewRoc Motorcycles, LLC*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020