UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHELLE LOSCALZO,                                :
                                                 :    Case No.: 07 CIV 3046
                        Plaintiff,               :    (CLB)
                                                 :
        - against -                              :
                                                 :
NEWROC MOTORCYCLES, LLC                           :
                Defendant.                        :
                                                 :
                                                 :
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorney for Defendant NewRoc Motorcycles, LLC*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

Of Counsel
        Mary Ellen Donnelly

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

POINT I        PLAINTIFF'S OPPOSITION PAPERS AND RULE 56.1
COUNTER-STATEMENT OFTEN CONTRADICT AND
MISREPRESENT THE TESTIMONY IN THIS ACTION ...................... 2

   A.   Plaintiff's Opposition Papers and Rule 56.1 Counter-Statement Often
Contradict and Misrepresent Testimony as to Significant Issues ........................... 2

POINT II      PLAINTIFF CANNOT STATE  A *PRIMA FACIE* CASE OF
RETALIATION ................................................................................... 3

   A.   No Protected Activity ..................................................................... 4

   B.   Lack of a Causal Connection ......................................................... 8

POINT III    NEWROC HAD A LEGITIMATE NON-DISCRIMINATORY
FOR THE TERMINATION OF PLAINTIFF'S EMPLOYMENT.......... 10

   A.   Plaintiff's Problems with COBRA Coverage ...................................... 13

POINT IV   PLAINTIFF CANNOT OFFER CREDIBLE EVIDENCE THAT
NEWROC'S STATED REASONS FOR ITS ACTIONS WERE
A PRETEXT FOR RETALIATION ...................................................... 16

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

AB v. Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312 (S.D.N.Y. 2005)..........................2

Abdullah v. Skandinaviska Enskilda Banken Corp., 1999 U.S. Dist. LEXIS 16045 (S.D.N.Y. 1999) ..................................................................................................... 11, 18

Argueta v. N. Shore Long Island Jewish Health Sys., 2003 U.S. Dist. LEXIS 20456 (E.D.N.Y. November 6, 2003) .......................................................................................... 10

Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999) .............................................. 2

Brown v. Time, Inc., 1997 U.S. Dist. LEXIS 6227 (S.D.N.Y. 1997) ........................ 10, 19

Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001) ................................................. 8

Communications Workers of America, Dist. One v. Nynex Corp., 898 F.2d 887 (2d Cir. 1990)............................................................................................................... 13, 14

Davis v.  State Univ.  of New York, 802 F.2d 638 (2d Cir. 1986) ...................................... 9

Dister v. Continental Group, Inc., 859 F.2d 1108(2d Cir. 1988)............................... 11, 18

Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997 *en banc*) ............................. 16, 19

Francis v. Runyon, 928 F. Supp. 195 (E.D.N.Y. 1996)....................................................... 9

Gray v. Robert Plan Corp., 991 F. Supp. 94 (E.D.N.Y. 1998) ......................................... 19

Greaves v. St. Luke's Roosevelt Hospital Center, 2005 U.S. Dist.LEXIS 4082 (S.D.N.Y. 2005) ................................................................................................................. 8

Hayes v. New York City Dep't of Corrections, 84 F.3d 614 (2d Cir. 1996)....................... 2

Herrmann v. Cencom Cable Assocs., 978 F.2d 978 (7th Cir. 1992) ................................ 14

Huhn v. Koehring Co., 718 F.2d 239 (7th Cir. 1983)................................................... 11, 19

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2d Cir. 2005) ..................................... 9

Kephart v. Institute of Gas Technology, 630 F.2d 1217 (7th Cir. 1989).................... 11, 19

King v. Bratton, 2004 U.S. Dist. LEXIS 26011 (E.D.N.Y. 2001)........................................ 8

Knight v. Nassau County Civil Serv. Comm., 649 F.2d 157 (2d Cir. 1981)..................... 18

Martin v. City of NY, 627 F. Supp. 892, 896 (E.D.N.Y. 1985) ........................................... 2

Mendoza v. SSC&B Lintas, New York, 1997 U.S. App. LEXIS 27259
(2d Cir. 1997)........................................................................................................................ 7-8

Mesnick v. General Elec. Co., 950 F.2d 816 (1st Cir. 1991)............................................. 10

Neal v. Ferguson Constr. Co., 237 F.3d 1248 (2001) ......................................................... 8

Reich v. New York Hosp., 513 F. Supp. 854 (S.D.N.Y. 1981) ................................... 11, 19

Richards v. N.Y. Dept. of Corrections, 700 F. Supp. 2 (S.D.N.Y. 1988)........................ 18

Royall v. Tisch, 671 F. Supp. 143 (E.D.N.Y. 1987)........................................................... 18

Seils v. Rochester City Sch. Dist., 192 F. Supp.2d 100 (W.D.N.Y. 2002)....................... 10

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 1991) ....................... 9

Torres v. Pisano, 116 F.3d 625 (2d Cir.), cert. denied, 522 U.S. 997 (1997).................... 3

Wade v. New York Tel. Co., 500 F. Supp. 1170 (S.D.N.Y. 1980) .................................... 8

**FEDERAL STATUTES**

29 U.S.C. §§ 1162(2)(C)...................................................................................................... 14

29 U.S.C. § 1162 (3) ............................................................................................................ 13

42 U.S.C. § 1981................................................................................................................ 2, 3

42 U.S.C. 2000e et seq. ..........................................................................................................1

**STATE STATUTE**

New York State Executive Law § 296........................................................................... 1, 2

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted by Putney, Twombly, Hall & Hirson LLP, on behalf of defendant NewRoc Motorcycles, LLP ("NewRoc"), in further support of NewRoc's motion for partial summary judgment dismissing the claims of retaliation alleged in Plaintiff's Amended Complaint.  In an effort to obscure the facts relevant to NewRoc's motion for partial summary judgment, Plaintiff's opposition papers contain a litany of spurious accusations, material irrelevant to Plaintiff's allegations of sex discrimination and unsupported and inflammatory charges that NewRoc terminated Plaintiff's employment in retaliation for Plaintiff's alleged complaints about sexual harassment.  Plaintiff's opposition papers wrongfully and improperly insinuate that since NewRoc did not move for summary judgment seeking dismissal of the entire Amended Complaint, NewRoc must not dispute the allegations of sexual harassment asserted by Plaintiff.  Plaintiff's insinuation is erroneous.  It is abundantly clear from the documentary and testimonial evidence submitted in connection with this matter that not only does NewRoc dispute Plaintiff's allegations of sexual harassment, but Plaintiff's own deposition testimony and documentary evidence refute Plaintiff's allegations of sexual harassment and render Plaintiff's claims disingenuous at best.

The Second and Fourth Claims for Relief in Plaintiff's Amended Complaint allege that NewRoc retaliated against Plaintiff in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII") and the New York State Executive Law § 296, by terminating her employment after Plaintiff allegedly asserted allegations of sexual harassment against NewRoc, and discontinuing her health insurance benefits under COBRA.  However, Plaintiff's claims as alleged, are insufficient to state a

*prima facie* case of retaliation as such is defined under Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e *et seq*. ("Title VII"), New York State Executive Law § 296 and 42 U.S.C. § 1981.

Moreover, NewRoc has proffered a legitimate, non-retaliatory reason for Plaintiff's termination. Since NewRoc has produced compelling evidence proving its non-retaliatory reason for its actions, in order to survive summary judgment Plaintiff must show that NewRoc's stated reason for its action is merely a pretext. Plaintiff has not and cannot satisfy this burden.

## POINT I

### PLAINTIFF'S OPPOSITION PAPERS AND RULE 56.1 COUNTER-STATEMENT OFTEN CONTRADICT AND MISREPRESENT THE TESTIMONY IN THIS ACTION

**A. Plaintiff's Opposition Papers and Rule 56.1 Counter-Statement Often Contradict and Misrepresent Testimony as to Significant Issues**

As set forth in greater detail in the Donnelly Reply Affirmation, Plaintiff's Opposition Papers and Rule 56.1 Counter-Statement misrepresent the sworn testimony regarding matters at the heart of this action. Such contradictory allegations should be disregarded by the Court. *See*, Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999); Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996); Martin v. City of NY, 627 F. Supp. 892, 896 (E.D.N.Y. 1985). Courts also should not allow inconsistent allegations made in a complaint to defeat summary judgment in the face of contradictory testimony either. AB v. Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005).

## POINT II

## PLAINTIFF CANNOT STATE
## A *PRIMA FACIE* CASE OF RETALIATION

Plaintiff cannot demonstrate that NewRoc retaliated against her in violation of Title VII, New York State Executive Law or 42 U.S.C. § 1981. Accordingly, Plaintiff's two retaliation Causes of Action must be dismissed. In order to establish a *prima facie* case of retaliation, Plaintiff must demonstrate: (1) participation in a protected activity known to NewRoc; (2) an employment action disadvantaging Plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Torres v. Pisano, 116 F.3d 625 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997). The evidence in this case conclusively demonstrates that NewRoc did not discriminate or retaliate against Plaintiff, but instead gave her every opportunity to successfully perform her duties as a salesperson. Plaintiff simply cannot demonstrate that NewRoc retaliated against her in violation of Title VII or Section 296.

The termination of Plaintiff's employment for her well-documented performance deficiencies was in no way related to her alleged complaints of sexual harassment against Mr. Meskunas. When Plaintiff began employment at NewRoc, Plaintiff was advised of and received NewRoc's Policy against Discrimination and Sexual Harassment. This Policy advised employees that *"if [they] feel [they] are being harassed in any way by another employee or by a customer or vendor, they should make your feelings known to your supervisor immediately."* Plaintiff never utilized this procedure, and never complained to a supervisor or management about her alleged discriminatory conduct.

### A.      No Protected Activity

Plaintiff cannot demonstrate either that she participated in any protected activity or that anyone at NewRoc had knowledge of any alleged "protected activity" prior to the termination of Plaintiff's employment. Plaintiff blithely asserts in her Memorandum of Law that "on numerous occasions throughout her employment with defendant, both as greeter and salesperson, Plaintiff registered complaints about the foregoing sexually harassing behavior with Massa." (Plaintiff's Opposition Memorandum of Law p. 5). Plaintiff's claim, however, is not only unsubstantiated, but is refuted by the documentary evidence in this matter. During her deposition, Plaintiff could not remember a single instance in which she met with Ms. Massa to report the alleged sexual harassment. (Donnelly Reply Aff. Ex. 3, Plaintiff's Tr. 237-238, 294, 303). Ms. Massa testified during her deposition that Plaintiff never complained to her about sexual harassment. (Id., Massa Tr. 33). By email dated February 23, 2007, Plaintiff specifically apologized to Ms. Massa for "not telling [her] sooner and for saying anything about it on the phone today. I hope we can maintain our friendship and keep NewRoc and this situation out of it." (Id., Plaintiff's Tr. 238-239). Plaintiff's conclusory allegation that she complained to Ms. Massa on numerous occasions, without more, is insufficient to demonstrate that Plaintiff engaged in a protected activity.

Plaintiff also alleges in her Amended Complaint that she advised Ms. Massa that she had consulted an attorney regarding her complaints prior to the termination of her employment. However, the documentary evidence in this matter does not support Plaintiff's allegations. First, Plaintiff herself is unclear about the timing of her consultation with an attorney. During her deposition testimony, Plaintiff stated that she was not sure of the month in which she first consulted an attorney, but that it was before

4

the termination of her employment.  (Id., Plaintiff's Tr. 239, 263).  Plaintiff first identifies

December, 2006 as the month she contacted an attorney,  In the same deposition, Plaintiff

changes her testimony to assert that she met with an attorney in January, 2007.  Finally,

Plaintiff acknowledges that she does not recall when she first consulted an attorney

regarding her allegations of harassment.  (Id., Plaintiff's Tr. 263).  Plaintiff identified

Leonard Flamm, Esq. as the attorney with whom she consulted.  In fact, Plaintiff did not

consult with Mr. Flamm until the week of February 19, 2007, more than a week **after** the

termination of her employment from NewRoc.  Clearly, Plaintiff could not have advised

Ms. Massa about any meeting with an attorney prior to the occurrence of such a meeting.

(Donnelly Reply Aff. ¶4; Donnelly Reply Aff. Ex. 1)

  Plaintiff's documentary evidence in this matter further demonstrates that Plaintiff

did not perceive Mr. Meskunas's conduct to be offensive and therefore would not have

complained to Ms. Massa about any allegedly harassing conduct.  Plaintiff maintained

detailed records of her employment with NewRoc, the sales that she made, the customers

she spoke to and the complaints she had about her supervisor, Wayne Sforza.  A review

of those records, however, demonstrates that Plaintiff never recorded a single event in

which she claimed to be sexually harassed by Mr. Meskunas.  Plaintiff maintained a

detailed calendar on which she recorded every dispute between Mr. Sforza and herself.

(Donnelly Reply Aff. Ex. 3, Plaintiff's Tr. 32.)  Plaintiff could not find any record of any

allegedly harassing conduct on her calendar, nor could she identify any specific dates on

which any of the allegedly harassing conduct occurred.  (Id.)  Plaintiff's calendar is

completely devoid of any record of any inappropriate, sexually based conduct on the part

of Mr. Meskunas.  Plaintiff claims to have repeatedly complained about Mr. Meskunas's

conduct, yet Plaintiff's extensive documentation of events is completely devoid of any reference to any allegedly harassing conduct or any complaints to Ms. Massa about that conduct.  (Id., Plaintiff's Tr. 37)

Plaintiff's own actions also belie her claims of harassment and retaliation.  While Plaintiff claims to have experienced harassment from the first day she met Mr. Meskunas, even before she commenced employment at NewRoc, Plaintiff accepted Mr. Meskunas's offer of part-time employment with NewRoc.  Plaintiff then claims that even though she was harassed on "essentially a daily basis," Plaintiff quit her full-time, tenured job as a teacher to work full time for NewRoc at salary lower than that which she was receiving as a teacher.  While Plaintiff claims to have been subjected to repeated and severe harassment, harassment which she allegedly complained about to Ms. Massa, she willingly left her stable employment to work for NewRoc.  All of Plaintiff's actions contradict her allegations of harassment and retaliation.

Plaintiff tries to bolster her claim of retaliation by asserting that Sal Petrazzi, a former supervisory employee of NewRoc, had knowledge of her complaints to Ms. Massa about Mr. Meskunas's allegedly harassing conduct.  Mr. Petrazzi, however, testified that at no time during his employment with NewRoc did he witness any allegedly harassing conduct on the part of Mr. Meskunas toward Plaintiff, nor was he aware of any complaints about such conduct by Plaintiff. (Id., Petrazzi Tr.  7.)  Although Plaintiff's counsel repeatedly badgered Mr. Petrazzi during his deposition in an effort to coerce him into admitting that he witnessed Mr. Meskunas's sexually harassing behavior, Mr. Petrazzi stated that he never told Plaintiff that he heard Mr. Meskunas make any comments about her (Id. at 8); never heard Mr. Meskunas say anything of a sexual nature

towards Plaintiff (Id. at 11); did not observe any alleged incident regarding a motorcycle seat (Id. at 12); and never told Plaintiff's counsel on the telephone when questioned by him that he heard Mr. Meskunas make any statements or observed any sexual harassment. (Id. at 13).

Finally, Mr. Meskunas testified that he was the individual who made the final decision to terminate Plaintiff's employment with NewRoc. (Id., Mesknuas Tr. 121) Mr. Meskunas further testified that he had no knowledge of any complaints made by Plaintiff to Ms. Massa about his conduct at the time that he made the decision to terminate Plaintiff's employment. (Id., Mesknuas Tr. 90) Mr. Meskunas also testified that he had no knowledge that Plaintiff had consulted an attorney at the time he made the decision to terminate Plaintiff's employment. (Id.) Plaintiff admits that she never advised Mr. Meskunas that she found his conduct improper or offensive. (Id., Plaintiff Tr. 275). Plaintiff also acknowledged that she did not complain to Mr. Meskunas about his allegedly harassing conduct. (Id.) Ms. Massa also testified that Plaintiff never complained to her about sexual harassment in the workplace. (Id., Massa Tr. 33-34). Accordingly, Ms. Massa could not have reported any such complaints to Mr. Meskunas. Plaintiff has not and cannot demonstrate that at the time Mr. Meskunas made the decision to terminate Plaintiff's employment, Mr. Meskunas had any knowledge of any alleged protected activity.

Plaintiff argues that Ms. Massa's purported knowledge of Plaintiff's complaints of harassment should be imputed to Mr. Meskunas. Plaintiff simply has no credible evidence suggesting that Mr. Meskunas had any knowledge of her alleged complaints to Ms. Massa. Mendoza v. SSC&B Lintas, New York, 1997 U.S. App. LEXIS 27259 (2d

Cir. 1997) (affirming district court's conclusion that plaintiff's termination was not discriminatory because the decision-makers were unaware of plaintiff's complaint), *cert. denied*, 523 U.S. 1099 (1998); see Greaves v. St. Luke's Roosevelt Hospital Center, 2005 U.S. Dist.LEXIS 4082 (S.D.N.Y. 2005) (plaintiff did not show that the supervisors to whom he complained were involved in the decision to terminate him); King v. Bratton, 2004 U.S. Dist. LEXIS 26011, at *33 (E.D.N.Y. 2001). Absent a showing by Plaintiff that Mr. Meskunas had knowledge of Plaintiff's alleged complaints, Plaintiff cannot sustain her claim of retaliation. Based upon the testimony and documentary evidence in this matter, Plaintiff cannot demonstrate that NewRoc had knowledge of any "protected activity" prior to the termination of her employment.

**B.      Lack of a Causal Connection**

Despite Plaintiff's claim to the contrary, Plaintiff cannot establish a causal connection between Plaintiff's alleged protected activity and NewRoc's termination of her employment. "[T]o the extent that the employer…. goes beyond merely articulating a neutral reason for discharge to substantiating that reason by proving that it has a sound and factually supported basis, the employee's task of showing that this reason was a pretext will be more difficult." Wade v. New York Tel. Co., 500 F. Supp. 1170, 1178 (S.D.N.Y. 1980). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (*quoting* Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (2001)). "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before

the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 1991). NewRoc began disciplining Plaintiff for her poor job performance almost immediately upon her assumption of the Sales Associate position. The adverse employment action experienced by Plaintiff occurred only after she had received seven warnings and repeated counseling about her poor job performance. Plaintiff has quite simply failed to demonstrate any evidence of a causal connection between the termination of her employment and the alleged protected activity beyond her own allegations.

Absent sufficient evidence of a causal connection, Plaintiff cannot establish a *prima facie* case of retaliation. *See* Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (requiring, inter alia, evidence of "a causal connection between the protected activity and the adverse employment action" in order to establish a prima facie case of retaliation). NewRoc terminated Plaintiff's employment because she was unable to perform her job responsibilities. NewRoc's action simply was not retaliatory against Plaintiff. There is absolutely no proof or credible evidence that Plaintiff's termination was in any way related to her alleged complaints of discrimination.

### POINT III

### NEWROC HAD A LEGITIMATE NON-DISCRIMINATORY FOR THE TERMINATION OF PLAINTIFF'S EMPLOYMENT

Assuming, *arguendo*, that Plaintiff can establish all of the elements necessary to state a *prima facie* case of retaliation, NewRoc must demonstrate a legitimate, non-discriminatory reason for its actions in order to prevail with the instant motion. Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986); s*ee*, *also*, Francis v. Runyon, 928 F. Supp. 195, 203 (E.D.N.Y. 1996) (a court should not second guess the

defendant's judgment as long as it is not for a discriminatory reason). Despite Plaintiff's claims to the contrary, NewRoc terminated Plaintiff's employment solely on the basis of Plaintiff's sustained poor job performance.

Although Plaintiff admits in her Rule 56.1 Counter-Statement that she received a series of warnings dated September 3, 2006, September 21, 2006, December 20, 2006, January 27, 2007, and February 4, 2007, she claims that the warnings did not play any role in her discharge because such warnings were "baseless." However, Plaintiff acknowledged during her deposition testimony that she received counseling for her performance deficiencies. (Donnelly Reply Aff. Ex. 3, Plaintiff Tr. 256, 259, 260) Plaintiff states that she disagreed with the warnings because she did not think any of her performance deficiencies were "severe," and two of the write-ups were "bogus." (Id., Plaintiff's Tr. 256 & 259). It is well settled law that neither the Court, nor Plaintiff are in a position to second guess NewRoc's non-discriminatory business decisions. See Seils v. Rochester City Sch. Dist., 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002); Argueta v. N. Shore Long Island Jewish Health Sys., 2003 U.S. Dist. LEXIS 20456, at *28 (E.D.N.Y. November 6, 2003). Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991). An employee's disagreement with the employer's perceptions of job performance does not satisfy the plaintiff's burden to show that the employer's proffered reason for terminating the employee was a pretext for discrimination. Brown v. Time, Inc., 1997 U.S. Dist. LEXIS 6227 (S.D.N.Y. 1997). Plaintiff's disagreement with the assessment of her job performance is insufficient to sustain a claim of retaliation.

Further, the Second Circuit recognizes that "[w]here, as here, it cannot fairly be said that an employer's decision was so completely 'lacking in merit as to call into

question its genuineness,' evidence that the employer made a poor business judgment in discharging an employee is insufficient to create a triable issue as to the credibility of the employer's reasons." Abdullah v. Skandinaviska Enskilda Banken Corp., 1999 U.S. Dist. LEXIS 16045 (S.D.N.Y. 1999) (*Citing* Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988)).   In this matter, Plaintiff acknowledges that she actually received such warnings but disagreed with them. (Donnelly Reply Aff. Ex. 3, Plaintiff's Tr. 259). The ultimate inquiry is whether an employee's performance "meets his employer's legitimate expectations." Huhn v. Koehring Co., 718 F.2d 239, 244 (7th Cir. 1983); *see* Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1989); Reich v. New York Hosp., 513 F. Supp. 854, 859 (S.D.N.Y. 1981).   Plaintiff received seven warnings in a five month period.  Over that same five month period Plaintiff was responsible for the sale of 19 motorcycles, or four motorcycles a month.  The total number of motorcycles sold in that time period was 150.  Plaintiff was responsible for only 12 percent of NewRoc's overall motorcycle sales for that time period.  Clearly, Plaintiff was not meeting the legitimate expectations of her position as a Sales Associate.

Plaintiff alleges that NewRoc must have perceived Plaintiff to be qualified for the Sales Associate position, since NewRoc turned down other job applicants, and chose to "promote" Plaintiff.  Again, Plaintiff not only misrepresents Mr. Meskunas's testimony in this matter, but disregards the deficiencies in her job performance.  Although Mr. Meskunas ultimately agreed to provide Plaintiff with the opportunity to perform the Sales Associate position at NewRoc, it was Plaintiff, and Plaintiff alone, who failed in her job performance.  Whether or not she was qualified for the position is irrelevant.  Plaintiff was simply unable to perform the responsibilities of the position.

It is also indisputable that Plaintiff repeatedly arrived late for work, despite being counseled on her tardiness by Mr. Sforza and Mr. Meskunas on numerous occasions. Plaintiff, as well as Plaintiff's own witnesses, acknowledged that Plaintiff was repeatedly late for work. (Donnelly Reply Aff. Ex. 3, Davidson Tr. 26-27; Plaintiff Tr. 260; Meskunas Tr. 78; DeSimone Tr. 30) It is indisputable that Plaintiff refused to complete the training courses available to her through Harley Davidson's online website. (Id., Plaintiff Tr. 247-249; Sforza Tr. 36-37; Meskunas Tr. 36). It is indisputable that Plaintiff received numerous counseling and warnings about her job performance. Within a five month period, Plaintiff received seven warnings about her job performance. It is readily apparent that long before Plaintiff claims to have complained about sexual harassment in the workplace, Plaintiff experienced numerous and significant problems with her job performance. It is equally apparent that NewRoc gave Plaintiff numerous opportunities to improve upon her performance. Plaintiff did not take advantage of those opportunities. Rather, Plaintiff continued to demonstrate inappropriate work attitudes and conduct. It is Plaintiff's lack of regard for her position and respect for her supervisor that resulted in the termination of her employment. NewRoc's decision to terminate Plaintiff's employment was solely the result of Plaintiff's sub par performance at work and her demonstrated inability to sell motorcycles. NewRoc has more than demonstrated that it had a legitimate, non-retaliatory motive for terminating Plaintiff's employment.

A.    **Plaintiff's Problems with COBRA Coverage**

In her Amended Complaint, Plaintiff also asserts a claim that her COBRA coverage had been terminated in retaliation for the filing of an action against NewRoc. Plaintiff's retaliation claims with respect to her COBRA coverage are equally without

merit.  Plaintiff failed to make timely payments as required under COBRA.  Accordingly,

NewRoc cannot be held responsible for the termination of Plaintiff's COBRA coverage.

Pursuant to the COBRA regulations, which were provided to Plaintiff at the time

of the termination of her employment, in order to continue coverage Plaintiff was

required to make payments by the first of every month.  COBRA allows a 30-day grace

period for receipt of payments.  COBRA does not, however, require any extension of the

30 day grace period.  If payments are not made within that period of time, such payments

are late and will not be sufficient to continue COBRA coverage.  *See* 29 U.S.C. §

1162 (3).  Court's have consistently found that plaintiffs are not entitled to continued

COBRA coverage if they fail to comply with the requirements of their health plans and

submit their payments on time."  *See* Communications Workers of America, Dist. One v.

Nynex Corp., 898 F.2d 887, 889 (2d Cir. 1990) (COBRA permits health plans to require

the timely payment of a premium for such continuation coverage.)  Accordingly, an

employer will not be held liable for denial of COBRA coverage if such denial is based

upon an employee's nonpayment.

NewRoc's COBRA policy specifically states that continuation coverage will be

terminated before the end of the maximum period if "any required premium is not paid in

full *on time.*  The policy further provides that if an employee failed "to make a periodic

payment before the end of the grace period for that coverage period, [the employee] *will*

*lose all rights to continuation coverage under the plan.*"  (emphasis added) Herrmann v.

Cencom Cable Assocs., 978 F.2d 978 (7th Cir. 1992) (Court granted summary judgment

for the defendant on the ground that the plaintiff had failed to tender her premium for the

COBRA coverage within the statutory deadline); Communications Workers of America,

898 F.2d at 889 (COBRA also provides that continuation coverage will end on "the date on which coverage ceases under the plan by reason of a failure to make timely payment of any premium.") Finally, the policy forewarns policyholders that the provider will not send periodic notices of payments due for these coverage periods. 29 U.S.C. §§ 1162(2)(C). Communications Workers of America, 898 F.2d at 889 ("COBRA regulations . . . state that continuation coverage ceases on "the first day *for which* timely payment is not made." ). Plaintiff was aware of these procedures and even assured Ms. Massa that she would make sure to have the payments to NewRoc by the first of every month. Thus, as Plaintiff was aware of the need to submit timely payments, but still failed to do so, she can not attempt to now hold NewRoc liable for her failure to comply with COBRA requirements.

At the time Plaintiff elected COBRA, she submitted payment to NewRoc sufficient to continue her health insurance benefits under COBRA through April 30, 2007. (Donnelly Reply Aff. Ex. 3, Massa Tr. 71). Since Plaintiff had only submitted payment for COBRA benefits through April 31, 2007, in order to continue her health insurance benefits past April 31, 2007, Plaintiff was required to submit a COBRA check by May 1, 2007. NewRoc did not receive any check from Plaintiff for continuation of her health insurance under COBRA by May 1, 2007. (Id., Massa Tr. 77-78). Since COBRA permits a thirty (30) day grace period for payment to be made for continuation of benefits, Plaintiff had until June 1, 2007, to submit her payment to NewRoc. By June 1, 2007, NewRoc had still had not received Plaintiff's payment for her COBRA benefits. Plaintiff's health insurance coverage was discontinued as of May 1, 2007, as a result of Plaintiff's nonpayment. (Id., Massa Tr. 78-79). On June 6, 2007, Ms. Massa received an

unstamped envelope from Plaintiff, postmarked June 4, 2007, presumably containing

Plaintiff's May 1, 2007 check for COBRA benefits. However, since receipt of such

check was beyond the 30 day grace period for payment provided by COBRA, Ms Massa

did not open the envelope, nor was any check deposited. (Id.) As Plaintiff was aware

that her payments had to be made within 30 days after the first day of the coverage period

and failed to do so, Plaintiff cannot now try to hold NewRoc responsible for the

termination of her health insurance benefit.

Plaintiff also cannot state a claim that NewRoc refused her COBRA coverage in

retaliation for Plaintiff's filing of the instant action. On July 16, 2007, NewRoc

discovered that the insurance company had erroneously advised Plaintiff that her health

insurance coverage had ended as of February 28, 2007. After reviewing the insurance

bills, NewRoc immediately contacted the health insurance company to correct this error.

On September 9, 2007, NewRoc received notification from the health insurance company

that the error had been corrected. Plaintiff cannot state a claim against NewRoc for the

insurance company's error.

It is readily apparent from a review of the facts of this matter that Plaintiff's

employment was not terminated in retaliation for any allegedly protected activity. It is

equally apparent that Plaintiff was not refused COBRA coverage, nor was such coverage

cancelled in retaliation for Plaintiff's commencement of this action against NewRoc. All

appropriate paperwork was submitted to the insurance company for continuation of

Plaintiff's coverage. Upon learning that the insurance company had erroneously

discontinued Plaintiff's insurance coverage as of February 28, 2007, NewRoc

immediately contacted the insurance company to rectify that error. NewRoc did not

retaliate against Plaintiff in connection with her COBRA coverage.

## POINT IV

### PLAINTIFF CANNOT OFFER CREDIBLE EVIDENCE THAT NEWROC'S STATED REASONS FOR ITS <u>ACTIONS WERE A PRETEXT FOR RETALIATION</u>

Once the defendant has satisfied its rebuttal burden, Plaintiff has the burden of

producing evidence sufficient to support a rational finding that the legitimate, non-

discriminatory reasons proffered by the defendant were false, <u>and</u> that the discharge was

actually motivated by <u>intentional</u> retaliation. *See*, <u>Vassar</u>, 114 F.3d at 1339 ("the

Supreme Court tells us that 'a reason cannot be proved to be a "pretext <u>for</u>

<u>discrimination</u>" unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination

was the real reason.'"). Plaintiff cannot present even a scintilla of evidence that would

support pretext.

In an attempt to show pretext, Plaintiff alleges that she was "qualified" for the

sales position. Plaintiff's qualifications, or lack thereof, was not the basis for NewRoc's

termination of her employment. Rather, it was Plaintiff's continued poor job

performance and her refusal to improve that performance which resulted in the

termination of her employment. Plaintiff claims to have sold more than nineteen bikes

during her five months as a Sales Associate. Plaintiff's claim only further supports the

conclusion that she was unable to adequately perform her job responsibilities. Out of 150

motorcycles sold from August 21, 2006 to February 8, 2007, Plaintiff sold only 19 of

those motorcycles. Accordingly, one full time Manager and one part time Sales

Associate were responsible for the sale of the other 131 motorcycles.  Only Plaintiff would cite such an abysmal sales performance as evidence of her sales skills.

Further, although NewRoc authorized commissions to Plaintiff for the sale of 19 motorcycles, only 11 of the sales were originated by Plaintiff.  At least eight of the sales attributed to Plaintiff were referred by Mr. Meskunas in order to allow Plaintiff to collect a commission for those sales.  Plaintiff acknowledged that Mr. Meskunas would often refer sales to her. (Donnelly Reply Aff. Ex. 3, Plaintiff Tr. 289).  Clearly, Plaintiff did not possess the sales skills necessary for her to succeed in her position as a Sales Associate at NewRoc.

Plaintiff also claims that NewRoc did not provide her with any sales training. (Plaintiff's Opposition Memorandum of Law p. 7). Plaintiff, however, acknowledges that she attended a Harley Davidson training course and viewed training videos at the dealership. (Donnelly Reply Aff. Ex 2).  Plaintiff also had the opportunity to complete numerous online courses on Harley Davidson University, an opportunity Plaintiff refused.  Plaintiff claims that the online courses for which she was registered were not really online courses, but required additional material to which Plaintiff did not have access.  Again, Plaintiff's ignorance of the online courses is indicative of her refusal to take the steps necessary to improve her job performance.  Numerous NewRoc employees have registered for, completed and passed the online Harley Davidson University Courses, which require no outside materials. (Donnelly Reply Aff. Ex. 3, Sfroza Tr. 36). Plaintiff's failure to complete online courses further demonstrates her lack of dedication to her job and reinforces the fact that Plaintiff did not have, nor attempted to acquire, the knowledge necessary to sell Harley Davidson Motorcycles.

Plaintiff inexplicably asserts in her opposition papers that since Mr. Meskunas did not state that Plaintiff was terminated due to her excessive lateness, such lateness cannot be considered as part of Plaintiff's poor job performance. Such an assertion is absurd. Plaintiff's lateness clearly contributed to Plaintiff's overall poor performance. Plaintiff's repeated lateness is further evidence of Plaintiff's disdain and disregard for the job requirements she did not deem necessary for the performance of her responsibilities. As Plaintiff's counsel noted during Mr. Meskunas' deposition: "If my secretary came in late almost every day I'd fire her." (Id., Meskunas Tr. 43). *See also* Richards v. N.Y. Dept. of Corrections, 700 F. Supp. 2 (S.D.N.Y. 1988) (plaintiff's admitted extensive record of continuing tardiness despite prior discipline justified discharge); Royall v. Tisch, 671 F. Supp. 143, 146 (E.D.N.Y. 1987) (tardiness and insubordination justified dismissal).

Plaintiff's Opposition Papers attempt to dispute and disprove every disciplinary action taken by NewRoc against the Plaintiff. However "[w]here, as here, it cannot fairly be said that an employer's decision was so completely 'lacking in merit as to call into question its genuineness,' evidence that the employer made a poor business judgment in discharging an employee is insufficient to create a triable issue as to the credibility of the employer's reasons." Abdullah v. Skandinaviska Enskilda Banken Corp., 1999 U.S. Dist. LEXIS 16045 (S.D.N.Y. 1999) (*Citing* Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988)). The Courts also acknowledge that it is the court's role, in determining whether the employee's job performance was satisfactory, to rely on the evaluations rendered by supervisors. Id. (*citing* Knight v. Nassau County Civil Serv. Comm., 649 F.2d 157, 162 (2d Cir. 1981)). After all, job performance cannot be assessed

in a vacuum; the ultimate inquiry is whether an employee's performance "meets his employer's legitimate expectations." Huhn v. Koehring Co., 718 F.2d 239, 244 (7th Cir. 1983); *see* Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1989); Reich v. New York Hosp., 513 F. Supp. 854, 859 (S.D.N.Y. 1981). An employee's disagreement with her employer's assessment of her job performance does not satisfy the plaintiff's burden to show that the employer's proffered reason for terminating the employee was a pretext for discrimination. Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991); *see also* Brown v. Time, Inc., 1997 U.S. Dist. LEXIS 6227 (S.D.N.Y. 1997).

Plaintiff did not meet Mr. Meskunas' legitimate expectations for her job performance. Mr. Meskunas had the right to require his employees to meet certain performance standards. Plaintiff failed to meet such standards, both in the number of motorcycles she sold, as well as her failure to arrive at work on time, complete online training courses and to wear Harley Davidson attire. NewRoc has put forth ample evidence demonstrating Plaintiff's proven incompetence and unsatisfactory performance. For all the foregoing reasons and as previously demonstrated in NewRoc's Motion for Partial Summary Judgment, NewRoc has provided legitimate non-discriminatory reasons for its actions toward Plaintiff. *See*, Gray v. Robert Plan Corp., 991 F. Supp. 94, 99 (E.D.N.Y. 1998) ("Any legitimate non-discriminatory reason will rebut the presumption [of discrimination] triggered by the *prima facie* case.") (*quoting* Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997 (*en banc*)).

## CONCLUSION

For all the foregoing reasons, this Court should grant NewRoc's motion for summary judgment dismissing the Complaint in its entirety and award NewRoc such other and further relief, including costs and attorneys' fees, as the Court deems just and proper.

Dated: New York, New York
       January 23, 2008

                                    _____/s/ MED_____
                                    Mary Ellen Donnelly (MD 4396)
                                    PUTNEY, TWOMBLY, HALL & HIRSON LLP
                                    521 Fifth Avenue
                                    New York, New York 10175
                                    (212) 682-0020
                                    *Attorneys for Defendant*
                                    *NewRoc Motorcycles LLC*