UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
MICHELLE LOSCALZO,
                             Plaintiff,

        -against-

NEW ROC MOTORCYCLES, LLC,

                             Defendant.
--------------------------------------------------------------- x

07 Civ. 3046 (CLB)

**REPLY DECLARATION OF JASON BERNBACH IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO STRIKE**

FILED VIA ECF

      JASON BERNBACH declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

      1. I am co-counsel for plaintiff Michelle Loscalzo ("Plaintiff") in the above-captioned action, and am fully familiar with the facts and circumstances herein. I submit this reply declaration in further support of plaintiff's motion to strike, or, in the alternative, to amend her opposition to defendant's motion for partial summary judgment.

      2. Annexed hereto are true and correct copies of the following documents:

      Exhibit 1: Compendium of relevant excerpts from (a) defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Strike, or, in the Alternative, for Leave to Amend Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment; and (b) defendant's Memorandum of Law in Further Support of Defendant's Motion for Partial Summary Judgment;

      Exhibit 2: Relevant excerpt of Amended Complaint;

      Exhibit 3: Relevant excerpts from the transcript of the deposition testimony of Michelle Loscalzo, taken on December 3, 2007;

<u>Exhibit 4</u>: February 20, 2007 letter from Jeffrey M. Bernbach to John Meskunas.

3. For the reasons set forth above and in her accompanying memorandum of law, plaintiff respectfully requests that the Court grant her motion in its entirety.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: White Plains, New York
       February 6, 2008

<u>s/ Jason Bernbach</u><br>
JASON BERNBACH (JLB-3392)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the Declaration of Jason Bernbach In Opposition to Defendant's Motion for Partial Summary Judgment, with exhibits annexed thereto, was served via electronic case filing and U.S. mail on Putney, Twombly, Hall & Hirson, attorneys for defendant, 521 Fifth Avenue, New York, New York 10175, on the 6th day of January 2008.

                s/ Jason Bernbach
                Jason Bernbach (JLB-3392)

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHELLE LOSCALZO,                        :    Filed via ECF
                                          :
                          Plaintiff,      :    Case No.: 07 CIV 3046 (CLB)
                                          :
            - against -                   :
                                          :
NEWROC MOTORCYCLES, LLC,                  :
                                          :
                          Defendants.     :
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE, OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorney for Defendant NewRoc Motorcycles, LLC*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

Of Counsel
    Mary Ellen Donnelly

statement is inherently hearsay. Whether or not a statement is hearsay depends upon what use the offeror intends the fact-finder to make of it." Id. Accordingly, the Flamm Letter is hearsay only if NewRoc is offering the letter to prove the truth of the matter asserted.

The Flamm letter was submitted in connection with NewRoc's Reply Papers not to prove that Plaintiff in fact saw Mr. Flamm during the week of February 19, 2008, but rather, to impeach Plaintiff's claim, and prior deposition testimony. As argued in NewRoc's moving papers, Plaintiff herself was not sure of the times that she met with or consulted any counsel in connection with her claim against NewRoc. The Flamm Letter simply casts doubt on Plaintiff's own recitation of events with respect to her claim of retaliation.

Plaintiff asserts that since the Flamm Letter is unsworn the letter is inadmissible hearsay. However, this general proposition does not hold true when the letter is not being used to prove the truth of the matter asserted. As the court stated in Inter-American Dev. Bank v. NextG Telecom Ltd., 503 F. Supp. 2d 687, 696 (S.D.N.Y. 2007) "*insofar* as [the letter] is being offered to prove the truth of the assertions made therein, it is hearsay." (emphasis added). Here, as the letter was not being used to prove the truth of the matter asserted, it would not constitute inadmissible hearsay. The Flamm Letter was simply being used to further impeach Plaintiff's deposition testimony in which she stated she met with counsel in January 2007 regarding her allegations of sexual harassment. (Exhibit A, Plaintiff's Tr. 263). Plaintiff's testimony regarding when she actually sought counsel and met with Mr. Flamm has been inconsistent and contradictory throughout this action. During her deposition, Plaintiff first claimed she had *gone to see* a lawyer in December, 2006. (Exhibit A, Plaintiff's Tr. 240; Id., Plaintiff's Tr. P. 243 ["Leonard

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHELLE LOSCALZO,

                Plaintiff,

   - against -

NEWROC MOTORCYCLES, LLC
                Defendant.

---------------------------------------------------------------X

Case No.: 07 CIV 3046
(CLB)

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorney for Defendant NewRoc Motorcycles, LLC*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

Of Counsel
    Mary Ellen Donnelly

the termination of her employment. (Id., Plaintiff's Tr. 239, 263). Plaintiff first identifies December, 2006 as the month she contacted an attorney. In the same deposition, Plaintiff changes her testimony to assert that she met with an attorney in January, 2007. Finally, Plaintiff acknowledges that she does not recall when she first consulted an attorney regarding her allegations of harassment. (Id., Plaintiff's Tr. 263). Plaintiff identified Leonard Flamm, Esq. as the attorney with whom she consulted. In fact, Plaintiff did not consult with Mr. Flamm until the week of February 19, 2007, more than a week **after** the termination of her employment from NewRoc. Clearly, Plaintiff could not have advised Ms. Massa about any meeting with an attorney prior to the occurrence of such a meeting. (Donnelly Reply Aff. ¶4; Donnelly Reply Aff. Ex. 1)

Plaintiff's documentary evidence in this matter further demonstrates that Plaintiff did not perceive Mr. Meskunas's conduct to be offensive and therefore would not have complained to Ms. Massa about any allegedly harassing conduct. Plaintiff maintained detailed records of her employment with NewRoc, the sales that she made, the customers she spoke to and the complaints she had about her supervisor, Wayne Sforza. A review of those records, however, demonstrates that Plaintiff never recorded a single event in which she claimed to be sexually harassed by Mr. Meskunas. Plaintiff maintained a detailed calendar on which she recorded every dispute between Mr. Sforza and herself. (Donnelly Reply Aff. Ex. 3, Plaintiff's Tr. 32.) Plaintiff could not find any record of any allegedly harassing conduct on her calendar, nor could she identify any specific dates on which any of the allegedly harassing conduct occurred. (Id.) Plaintiff's calendar is completely devoid of any record of any inappropriate, sexually based conduct on the part of Mr. Meskunas. Plaintiff claims to have repeatedly complained about Mr. Meskunas's

5

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
MICHELLE LOSCALZO,

                Plaintiff,

-against-

NEW ROC HARLEY DAVIDSON AND
BUELL, INC.,

                Defendant.
-----------------------------------------x

Civil Action No. 07 Civ. 3046 (SCR)

**AMENDED COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

EXHIBIT
MA559
1
11/16/07 DA

## I. INTRODUCTORY STATEMENT

1. Plaintiff Michelle Loscalzo, an unmarried female American citizen, thirty nine years of age, seeks redress for discrimination on account of her sex, for sexual harassment, and for unlawful retaliation, suffered by her in violation of the Constitution and laws of the United States in her capacity as an employee of Defendant New Roc Harley Davidson And Buell, Inc.

## II. JURISDICTION AND VENUE

2. This action is brought and jurisdiction lies pursuant to 42 U.S.C. §§2000e(5) et seq., 2000e(16), and 28 U.S.C. §§1331 and 1343, this being a suit based upon the provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§2000e-2 et seq. In addition, pursuant to 28 U.S.C. §1367(a), Plaintiff invokes the Court's supplemental jurisdiction as to pendent New York State claims arising under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law, Article 15, §290 et seq.

otypical view of women. Specifically, as he told Plaintiff on an occasion when one of the her female employees was hugging Mr. Sforza and lavishing her attention on him, "see, if you behaved like this, we wouldn't have any problems."

11. On several occasions, Plaintiff complained to Defendant's General Manager Patti Massa about Mr. Sforza's behavior, but to no avail.

12. In or about January 2007, plaintiff consulted with an attorney regarding the above-described unlawful treatment to which she had been subjected by Defendant.

13. Shortly before her discharge, Plaintiff informed Defendant's General Manager Patti Massi of her consultation with the attorney regarding the unlawful treatment to which she had been subjected by Defendant.

14. When Plaintiff was discharged, Mr. Meskunas told her that he couldn't say anything bad about her, but he had told her previously that he might have to fire her because his choice was to fire her, as Mr. Sforza didn't like working with her, or to fire Mr. Sforza; and, of course, he chose to discharge Plaintiff.

15. Upon information and belief, Defendant will now claim that Plaintiff was discharged for poor sales performance and poor results on internet selling tests. Any such claim is totally false; and with respect to internet test results, Plaintiff was told to take said tests without benefit of being provided with the course material, despite her repeated requests to Mr. Meskunas and Ms. Massa that she be supplied with same.

16. Defendant's anticipated proffered reason for discharging Plaintiff (unsatisfactory performance) is false and a pretext to discriminate against Plaintiff based upon her sex, and to avoid the consequences of Defendant's sexual harassment of Plaintiff, and in retaliation for

4

**EXHIBIT 3**

```
 1  meeting?
 2      A.   I told Patty.  It wasn't until January,
 3  the end of January that I told Patty that I was
 4  going to seek legal counsel and I wanted to see if I
 5  could trust her.  I had already, you know, gone to
 6  see a lawyer.
 7      Q.   So what are you referring to in this
 8  e-mail when you say "I want to apologize for not
 9  telling you sooner"?
10      A.   Because I didn't tell her that I had gone
11  to see the lawyer beforehand.
12      Q.   Before what?
13      A.   Before -- I had gone in December.
14      Q.   For not telling her sooner than what?
15      A.   Telling her at a sooner time that I had
16  gone to see the lawyer.
17      Q.   When did you tell her that you went to
18  see the lawyer?
19      A.   I didn't tell her until like January, the
20  end of January, and once I told her I was going to
21  seek legal counsel, a week later I lost my job.
22      Q.   Why are you apologizing February 23 for
23  not telling her sooner?
24      A.   Meaning that I thought she was my friend,
25  that I should have told her what was going on, but I
```

```
1         A.    Uh-hum.
2         Q.    This is not the same as your original
3    Complaint filed in this matter --
4         A.    Uh-hum.
5         Q.    -- is that correct?
6         A.    No, it's amended, no.
7         Q.    Hum?
8         A.    If it's the amended, then no.
9         Q.    Do you know what was changed in your
10   Amended Complaint?
11        A.    The COBRA payment stuff.
12        Q.    Anything else?
13        A.    I'd have to look at the first one.  I
14   don't recall.
15              MS. DONNELLY:  Would you mark that?
16              (Seven-page Complaint plus Cover Page are
17   received and marked Defendant's Exhibit 29 for
18   identification.)
19        Q.    Here's the original.
20              MS. DONNELLY:  I don't have another copy
21   of that, I apologize.
22        A.    There are some changes.
23        Q.    Do you know what the changes are?
24        A.    Well, the COBRA one.
25        Q.    Anything else?
```

1   A.   The Amended, it states that I sought
2   legal counsel in January 2007.
3   Q.   That wasn't in the original, correct?
4   A.   Right.  It looks similar, so --
5   Q.   Do you know why your claim that you
6   sought legal counsel in January 2007 was omitted
7   from your original Complaint?
8   A.   I don't know.
9   Q.   Did you, in fact, seek legal counsel in
10  January 2007?
11  A.   I said -- Leonard Flamm, I think I said
12  December.  It was January, that's what it was, yeah.
13  Q.   Do you have any record of the date on
14  which you met with that attorney?
15  A.   No.  I suppose I could find out.
16  Q.   I'm going to request that you provide --
17  that I be provided with any record that you have --
18  A.   Okay.
19  Q.   -- of that date.
20  A.   Okay.
21  Q.   Did you have to pay for that
22  consultation?
23  A.   No, I didn't.
24  Q.   You now believe that meeting to have
25  occurred in January 2007?

1  A. Yeah, that's what it says here, yeah,
2  yes.
3  Q. If you went in January 2007, when did you
4  actually complain to Patty Massa about -- not
5  complain, tell Patty Massa about it?
6  A. That I was going to seek legal counsel,
7  right after that.
8  Q. After what?
9  A. After I did seek legal counsel.
10 Q. With respect to your claim for
11 retaliation in connection with the COBRA payments,
12 have you resubmitted any of the medical bills which
13 they had previously denied payment of?
14 A. No, I haven't, not yet.
15 Q. Why not?
16 A. I just haven't had the chance.
17 Q. At the time that you were notified that
18 you did not have COBRA coverage, did you contact
19 anybody at the insurance company?
20 A. Yes, I did.
21 Q. Who did you contact?
22 A. I don't remember his name. I called them
23 to find out what was going on. They said they had
24 not received any payments from me.
25 Q. Who did you call?

# EXHIBIT 4

# Bernbach
## Law Firm PLLC

*Renaissance Corporate Center*
*245 Main Street, 5th Floor*
*White Plains, N.Y. 10601*
*914-428-9100*
*Fax 914-428-9106*

February 20, 2007

John Meskunas
President
New Roc Harley Davidson And Buell, Inc.
8 Industrial Lane
New Rochelle, N.Y. 10805

EXHIBIT
Meskunas
9
11/7/07 WH

Re: Michelle Loscalzo

Dear Mr. Meskunas:

We represent Michelle Loscalzo in connection with her discharge from your company on February 8, 2007. As we understand it, during Ms. Loscalzo's employment at New Roc Harley Davidson And Buell, Inc., she was, in the presence of witnesses (both present and former employees), repeatedly subjected to unwanted, lewd and lascivious comments by you of a sexual nature, including, but not limited to, comments about her anatomy and her attire, as well as an invitation to accompany you on a "business trip" which had no business purpose for Ms. Loscalzo. Despite repeatedly making it clear to you that your behavior was offensive and unwelcome, you persisted therewith essentially on a daily basis.

In addition, New Roc Harley Davidson And Buell Inc.'s Sales Manager Wayne Sforza, Ms. Loscalzo's immediate supervisor, consistently subjected her to unwarranted criticism, as well as interfering with her right to receive earned sales commissions, because, as he told her, she did not conform to his stereotypical view of women -- in this instance by failing to lavish her attention on him as did other female employees of the company; causing Ms. Loscalzo to complain to Patti Massa several times about Mr. Sforza's behavior.

In the end, despite excellent performance as illustrated by her sales of motorcycles and high CSI, and after being enticed away from her long time teaching position with the New York City Board of Education based on your promise of a lucrative future with your company, Ms. Loscalzo was discharged. In such circumstances, it appears clear that a motivating factor in said discharge was Ms. Loscalzo's opposition to the sexual harassment/sex discrimination she suffered at the hands of her employer. Therefore, unless this matter is resolved to her complete satisfaction within one week, Ms. Loscalzo will have no choice but to institute legal action. If you are interested in pursuing an amicable resolution, please have your attorney contact us promptly.

Very truly yours,

Jeffrey M. Bernbach

JMB/ab

CONFIDENTIAL
D0012