UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

MICHELLE LOSCALZO,

                Plaintiff,

          -against-

NEW ROC MOTORCYCLES, LLC,

                Defendant.
------------------------------------------------------------------x

07 Civ. 3046 (CLB)

<u>FILED VIA ECF</u>

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION TO STRIKE, OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND HER OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

           BERNBACH LAW FIRM PLLC
245 Main Street
White Plains, New York  10601
(914) 428-9100
Attorneys for Plaintiff

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    POINT I
    THE FLAMM LETTER MAY NOT BE USED TO IMPEACH PLAINTIFF, AND
    THUS REMAINS INADMISSIBLE HEARSAY, AND HENCE NON-COGNIZABLE
    UPON SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    A Witness May Not Be Impeached By the Statement of Another. . . . . . . . . . . .1

    B.    Even If Impeachment of One Witness With the Statement of Another Were Not
        Impermissible, Plaintiff's Testimony Is Not Inconsistent With the Flamm
        Letter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    POINT II
    DEFENDANT'S FAILURE TO PRODUCE THE FLAMM LETTER
    VIOLATED FED. R. CIV. P. 26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT III
    DEFENDANT'S REQUEST FOR LEAVE TO DEPOSE FLAMM
    SHOULD BE DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

## TABLE OF AUTHORITIES

**Case**                                                                                                    **Page**

In re von Bulow, 828 F.2d 94 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Currency Conversion Fee Antitrust Litig., 2002 U.S. Dist. LEXIS 21196
    (S.D.N.Y. Nov. 4, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . 9

Ramos v. Marriott Int'l, 134 F.Supp.2d 328 (S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . 9

Penguin Books USA, Inc. v. New Christian Church of Full Endeavor, 262 F.Supp.2d
    251 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SEC v. R.A. Holman & Co., 34 F.R.D. 139 (S.D.N.Y. 1963). . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Abrams, 357 F.2d 539 (2d Cir. 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Cuevas Pimentel, 815 F.Supp. 812 F.Supp. 81 (D.Conn. 1993). . . . . . . . . . . . 2

United States v. Fasciana, 2002 U.S. Dist. LEXIS 21535 (S.D.N.Y. Mar. 18, 2003). . . . . . . 3, 6

United States v. Mejia-Velez, 855 F.Supp. 607 (E.D.N.Y 1994). . . . . . . . . . . . . . . . . . . . . . 7

Victory v. Bombard, 570 F.2d 66 (2d Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Rule**                                                                                                    **Page**

Fed. R. Civ. P. 11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Fed. R. Civ. P. 26(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 37(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **TABLE OF AUTHORITIES (*cont'd*)**

| **Rule** | **Page** |
|---|---|
| Fed. R. Evid. 613(b). | 3 |
| Fed. R. Evid. 801(d)(1). | 4 |
| Fed. R. Evid. 801(d)(2)(A). | 4 |
| Fed. R. Evid. 801(d)(2)(B). | 4 |
| Fed. R. Evid. 801(d)(2)(C). | 5 |
| Fed. R. Evid. 801(d)(2)(D). | 5 |
| Fed. R. Evid. 801(d)(2)(E). | 5 |

Plaintiff Michelle Loscalzo ("Plaintiff") respectfully submits this reply memorandum of law in further support of her motion to strike the December 5, 2007 letter from Leonard N. Flamm, Esq. ("Flamm") to defense counsel Mary Ellen Donnelly, Esq. (the "Flamm Letter"), filed by defendant New Roc Motorcycles, LLC ("Defendant") in connection with its reply memorandum of law in further support of its motion for partial summary judgment, or in the alternative, for leave to amend her opposition to said motion to include a January 29, 2008 Declaration of Leonard N. Flamm (the "Flamm Declaration"). In addition, plaintiff includes in this memorandum of law her opposition to defendant's request, as recited in a February 4, 2008 letter to the Court from defense counsel, for leave, now, some two months after discovery herein closed, to depose Flamm – of whose identity and potential relevance to this case defendant was fully aware during discovery – and to do so not merely on the highly limited matter of the timing of his consultations with plaintiff, but on the full breadth of his substantive, and privileged, consultations with plaintiff about her sexual harassment claims.

## ARGUMENT

### POINT I
### THE FLAMM LETTER MAY NOT BE USED TO IMPEACH PLAINTFF, AND THUS REMAINS INADMISSIBLE HEARSAY, AND HENCE NON-COGNIZABLE UPON SUMMARY JUDGMENT

**A.    A Witness May Not Be Impeached By the Statement of Another**

Implicitly conceding that, if proffered for the truth of the matters asserted therein, the Flamm Letter would be inadmissible hearsay, and thus improper for consideration upon summary judgment, defendant endeavors to sidestep such a fate for the Letter by contending that the Letter

is not in fact hearsay, as it is being offered not for its truth, but rather to "impeach" plaintiff's testimony as to when she consulted with Flamm. This, quite simply, is pure legal fantasy, telegraphed right off the bat by defendant's utter failure to come forth with *any* authority in support of it, whether in the form of a Federal Rule of Evidence or judicial precedent. This is hardly shocking, however, given that courts have routinely *rejected* the very proposition defendant advances as the linchpin of its argument in this regard – that a witness may be impeached by the statement of another – and forcefully so, as in United States v. Tarantino, 846 F.2d 1384, 1416 (D.C. Cir. 1988), wherein the Court of Appeals left no doubt that "witnesses are not impeached by prior inconsistent statements of *other* witnesses, but by their *own* prior inconsistent statements." (emphasis in original). Similarly, the Second Circuit held in United States v. Abrams, 357 F.2d 539, 547 (2d Cir. 1966), that "[w]e find no authority for the proposition, advanced by [defendant], that hearsay statements by a third party may be introduced to impeach a witness."[1] And in United States v. Cuevas Pimentel, 815 F.Supp. 81 (D.Conn. 1993), current Second Circuit Judge Cabranes went on at some length to dispel such a wholly fanciful conception of impeachment, observing that Fed. R. Evid. "613(b) permits the use for impeachment purposes of evidence that a witness made a prior statement that is inconsistent with his in-court testimony. This rule makes no provision, express or implied, for the attribution of statements of others to a witness." *Id*., at 83 (citing Fed. R. Evid. 613(b); Wright, Miller & Graham, *Federal Practice & Procedure: Evidence* §6581 (1992)). Judge Cabranes then proceeded to emphasize just how alien the idea of impeaching a witness with a statement by

---

[1] In Abrams, the court barred the evidence in question's use for impeachment purposes even though it was a sworn deposition, which, of course, cannot even be said of the unsworn Flamm Letter.

anyone other than himself was: "It is not surprising, then, that courts appear to take it for granted that a statement is admissible as a statement of a witness *only* where the statement was in fact made by the witness... Indeed, the defendant has not drawn the court's attention to a single case which even suggests that a statement by a person speaking on behalf of a witness can be treated as a prior inconsistent statement of the witness himself under Rule 613(b)." *Id.*, at 83 (citing Tarantino, *supra*) (emphasis in original).[2] This categorical rejection of defendant's view of what constitutes impeachment has been echoed no less emphatically by other courts in this district, *see e.g.* Penguin Books USA, Inc. v. New Christian Church of Full Endeavor, 262 F.Supp.2d 251, 262 (S.D.N.Y. 2003)(Holding videotaped statements by an individual other than the witness inadmissible as impeachment evidence against the witness because "'[t]he [impeaching] statement must be that of the witness to be impeached and not some other person.'" (quoting 30B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Evidence*, §6203 (Interm. ed. 2002)); United States v. Fasciana, 2002 U.S. Dist. LEXIS 21535, *7 (S.D.N.Y. Mar. 18, 2003)("[T]here has been no basis shown for any notion that these statements could properly be used to impeach witnesses other than the declarants."); SEC v. R.A. Holman & Co., 34 F.R.D. 139, 140 (S.D.N.Y. 1963)("The affidavits of the investors are in the possession of the defendants and are available for impeachment purposes should their trial testimony vary from that contained in the affidavits. However, a third party's statement (an investigator's) is not admissible for impeachment of the investor."), thereby leaving absolutely no doubt that the entire foundation for defendant's argument that the Flamm Letter is beyond the ambit of the hearsay rule is utterly

---

[2] It is worth noting that, based upon the above reasoning, the court in Cuevas Pimentel disallowed as proper impeachment the very type of "evidence" defendant seeks to utilize to "impeach" plaintiff herein, namely statements by the putative impeachee's attorney. *Id.*

untenable.

As if such need be underscored, it is by simple reference to the Federal Rules of Evidence, wherein the only two rules bearing upon the issue herein, *i.e.* Rule 613, which concerns the impeachment of a witness by prior inconsistent statements, and Rule 801(d), which exempts from the definition of hearsay certain types of statements utilized for impeachment purposes, in no way authorize the "method" of impeachment advanced by defendant herein. As the court in Cuevas Pimentel made perfectly clear above, Rule 613 speaks only of permitting the impeachment of a witness via a statement by that particular witness, and thus not at all by a statement of anyone else. Similarly, Rule 801(d)(1) holds not to be hearsay only prior inconsistent statements made by the witness himself, and thus mentions nothing at all about, and accordingly extends no such hearsay immunity to, statements made by anyone other than the witness.[3] And Rule 801(d)(2)'s exemption of admissions by party-opponents likewise fails to contemplate the circumstances giving rise to the Flamm Letter, as (a) the Letter was, of course, not "the party's own statement, in either an individual or a representative capacity," Fed. R. Evid. 801(d)(2)(A), since plaintiff neither made it herself nor authorized Flamm, who never represented her, and thus did not represent her at the time of the Letter's publication, to make it on her behalf; (b) plaintiff has never "manifested an adoption or belief in its truth," Fed. R. Evid. 801(d)(2)(B); (c) the Letter, in having been written by an individual who, as mentioned above, never represented plaintiff in connection with her claims herein, and who, of course, wrote it without plaintiff's knowledge,

---

[3] Even if such non-witness statements could be employed for impeachment purposes under Rule 801(d)(2), the Flamm Letter would still fall short of the rule's requirements, given that the rule requires that the prior inconsistent statement have been "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition," and that the Letter was, of course, unsworn and provided beyond any formal testimony-taking forum.

4

much less affirmative assent, therefore, by definition, was neither "a statement by a person authorized by the party to make a statement concerning the subject," Fed. R. Evid. 801(d)(2)(C), nor "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," Fed. R. Evid. 801(d)(2)(D); and (d) the Letter was, obviously, not "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy," Fed. R. Evid. 801(d)2)(E).

Whereas the Flamm Letter thus in no way fits the parameters of proper impeachment, a perfect illustration of what would comes from none other than defendant's opposition to the instant motion itself, an irony that, at the same time, reveals that, even more fundamentally than the complete legal untenability of defendant's impeachment argument, defendant's very proffer of that argument – based upon the claim that impeachment, and not proof of the truth of the matters asserted therein, were all along the sole and exclusive impetus for its reliance upon the Letter – was undertaken in the utmost of bad faith. At page 2 of its opposition to this motion, defendant assures the Court that "[t]he Flamm Letter was submitted in connection with New Roc's Reply Papers not to prove that plaintiff *in fact saw Mr. Flamm during the week of February 19, 2008 [sic]*, but rather, to impeach Plaintiff's claim, and prior deposition testimony." (Bernbach Reply Dec., Ex. 1)(emphasis added).[4] However, at page 5 of its summary judgment reply brief, defendant – the same party making the above-quoted representation – stated exactly the opposite: "*In fact, Plaintiff did not consult with Mr. Flamm until the week of February 19, 2007*, more than a week after the termination of her employment from New Roc." (Bernbach Reply Dec., Ex.

---

[4] "Bernbach Reply Dec." refers to the Reply Declaration of Jason Bernbach in Further Support of Plaintiff's Motion to Strike etc.

5

1)(emphasis added; emphasis in original omitted). Defendant then, in the next sentence, went on to explicitly utilize what it had unquestionably posited as a statement of fact not to point up a supposed inconsistency with some specific portion of plaintiff's deposition testimony, but rather to endeavor to affirmatively establish another purported fact, *i.e.* that "Plaintiff could not have advised Ms. Massa about any meeting with an attorney prior to the occurrence of such a meeting." (*Id.*). On a legal level, the foregoing not only, by employing inconsistent statements made by the same speaker, exemplifies the exclusively accepted form of impeachment, but clearly depicts the divergence between what defendant now claims it was doing with the Flamm Letter and what it was in fact at the time of its proffer seeking to do with it. Quite simply, via the Flamm Letter, defendant was not seeking to impeach plaintiff's testimony, but rather was attempting to construct a factual counter-narrative to her recitation of the facts surrounding her notice to Massa shortly before her discharge of her intention to seek legal counsel, as a means of convincing the fact-finder to accept its version of those facts over plaintiff's, a distinction recognized by the court in Fasciana, *supra*, which, after rejecting the defendants' claim that statements of certain individuals could be used to impeach witnesses other than those individuals, explained that, "[t]o the extent the Defendants rely on apparent inconsistencies between these witnesses' accounts of relevant events and the accounts proffered at trial by [their adversary], attention to those inconsistencies goes to the weight of evidence rather than impeachment, which is strictly a credibility issue." *Id.*, at 7-8. And needless to say, in order to fashion such a counter-narrative, the evidence so utilized must be offered for its truth, which, therefore, even if defendant did not admit it in doing so, was what defendant was indisputably doing by way of its proffer of the Flamm Letter. As such, the Letter is not removed from the realm of inadmissible hearsay, and there,

accordingly, it must remain, sequestered from consideration upon summary judgment. Beyond the legalities, however, on a pure candor level, the foregoing unmistakably demonstrates that, when coming forth upon this motion with representations to this Court – representations that, under Fed. R. Civ. P. 11(b), must be made in good faith, and in accordance with the applicable law – that its proffer of the Flamm Letter was for impeachment, defendant, in defying its own preexisting admission to the contrary and a uniform body of law directly countermanding such a claim, was not being frank with the Court.[5]

### B. Even If Impeachment of One Witness With the Statement of Another Were Not Impermissible, Plaintiff's Testimony Is Not Inconsistent With the Flamm Letter

It is self-evident that, in order to impeach one's credibility on the basis of inconsistencies between certain statements, there must actually be inconsistencies between those statements, Victory v. Bombard, 570 F.2d 66, 69-70 (2d Cir. 1977)("Prior inconsistent statements may be used to impeach the credibility of a witness, but to admit specific statements the trial judge must be persuaded that they are indeed inconsistent."), so that, logically, "[w]here inconsistency is not demonstrated, the putative impeachment evidence must be rejected," United States v. Mejia-Velez, 855 F.Supp. 607, 616 (E.D.N.Y. 1994). Thus, even if the law were not so unimpeachable on the question of whether a witness may be impeached by statements other than his own, in order to impeach plaintiff's credibility with the Flamm Letter, defendant would first need to show inconsistency between the two, and this it could not do. While defendant goes on in its opposition

---

[5] Clearly, given this conduct by defendant, it should not be rewarded with the dispensation from the Court that it seeks in n. 1 of its opposition, namely that, in the event "the Court finds the unsworn status of the letter to be problematic," it should exercise its "authority to allow New Roc to resubmit the letter in admissible form." This is especially so in light of the fact that nothing prevented defendant from initially packaging the Letter's information in admissible form: it could have deposed Flamm during discovery, or it could have secured from Flamm a declaration. For whatever reason, it did neither, and thus should be forced to live with the consequences of its own errors.

at some length about the supposed morass of plaintiff's testimony regarding the timing of her consultation with Flamm, there is no morass at all. As defendant concedes at page 2 of its opposition, initially in her deposition plaintiff "was not sure of the times" of her consultations with Flamm – although, critically, while not certain initially as to the specifics, she consistently at all times throughout her deposition maintained that it was prior to her termination from defendant. However, what defendant fails to make clear is that, subsequently in her deposition, plaintiff, upon having been shown by defense counsel her Amended Complaint, in which, at ¶12, it states: "In or about January 2007, plaintiff consulted with an attorney regarding the above-described unlawful treatment to which she had been subjected by Defendant" (Bernbach Reply Dec., Ex. 2), and thus having had her recollection refreshed thereby, testified with certainty that she sought legal counsel from Flamm in January 2007 (Loscalzo Tr. 262-64).[6] Specifically, after she was asked: "Did you, in fact, seek legal counsel in January 2007?", plaintiff answered: "I said – Leonard Flamm, I think I said December. It was January, that's what it was, yeah." (*Id*.). Defendant, however, warps this testimony to make it seem inconsistent with Flamm's hypothesis in the Letter that he met "in person" with plaintiff sometime during the week of February 19, 2007, specifically by citing to page 263 of plaintiff's deposition transcript and equating plaintiff's statement therein – which she repeats twice on the following page – that she had "s[ought] legal counsel" from Flamm in January 2007 with a physical encounter with Flamm (*Id*.). Needless to say, one may "seek legal counsel," as plaintiff repeatedly described her interaction with Flamm in January 2007, other than by doing so in an in-person fashion, such as by telephone – as confirmed by Flamm himself, who,

---

[6] Relevant excerpts of the transcript of plaintiff's deposition testimony are annexed as Ex. 3 to the Bernbach Reply Dec.

at ¶3 of his Declaration herein, stated that he "spoke by telephone with Ms. Loscalzo periodically during January 2007, at which times Ms. Loscalzo *sought my counsel* regarding sexual harassment she said she was experiencing at the hands of her employer." (emphasis added). Accordingly, there exists no inconsistency between the Flamm Letter and the testimony of plaintiff proffered by defendant, so that, even if the Letter could be used generally to impeach plaintiff, its failure specifically to contradict plaintiff's testimony would foreclose such use in any event.

It must also not be forgotten that, even if none of the foregoing were true, and plaintiff had not yet consulted with Flamm at the time of her relevant conversation with Massa, what plaintiff told Massa in that conversation was that she "was going to seek legal counsel" (Loscalzo Tr. 240, 264), and needless to say, one need not have consulted a lawyer to have engaged in protected activity – a statement to a defendant, such as plaintiff's to Massa, of an intention to seek legal counsel is every bit as much an act of protected activity. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). Moreover, in claiming at page 3 of its opposition that plaintiff "is unable to prove, or even credibly argue, that she participated in any protected activity," defendant not only ignores the foregoing, but also the fact that plaintiff testified to registering with Massa numerous other complaints of sexual harassment, every single one of which was an instance of protected activity, and the entire chain of which provides a strong causal nexus to her discharge. Ramos v. Marriott Int'l, 134 F.Supp.2d 328, 347 (S.D.N.Y. 2001).

**POINT II**
**DEFENDANT'S FAILURE TO PRODUCE THE**
**FLAMM LETTER VIOLATED FED. R. CIV. P. 26**

In attempting to escape the fact of its clear violation of Rule 26's disclosure provisions by failing ever to produce to plaintiff the Flamm Letter, defendant makes some truly startling

9

arguments, whose manifest absurdity inadvertently supplies further support for plaintiff's position on this score. In the first place, it seeks to deflect attention from its culpability in this regard by turning this entire circumstance on its head, accusing *plaintiff* of having transgressed Rule 26, specifically by having failed to discharge an "obligation to ascertain the information in the Flamm Letter" and provide such to defendant after the filing of her Amended Complaint. In the first place, insofar as this illogically framed argument – that plaintiff should have anticipated that Flamm would, three-plus months into the future, write defense counsel a letter containing certain information and preemptively provide defendant with that information – means to assert that plaintiff should have furnished defendant with the date of her consultation with Flamm, she did that, to the best of her ability, in the Amended Complaint itself, wherein, as noted above, at ¶12 thereof, she stated: "In or about January 2007, plaintiff consulted with an attorney regarding the above-described unlawful treatment to which she had been subjected by Defendant." (Bernbach Reply Dec., Ex. 2). To the extent defendant claims that plaintiff should have supplied it with more specific information or with documents better pinpointing the date, she could only do that if she were able to, which she was not, as demonstrated in her deposition, wherein she was asked when she consulted with Flamm and could not lock down a specific date, and was then asked if she had any records that would reflect the date and replied that she did not (Loscalzo Tr. 264).[7] Thus, defendant's claims that plaintiff's counsel somehow flouted Rule 11 by having failed to engage in a good-faith investigation of the facts in this regard is not only facially ridiculous, but a rather audacious assertion from one that, as shown above, dissembled to the Court as to the purpose of

---

[7] Obviously then, not having any such records, plaintiff could not have supplied them in response to any of defendant's document requests, as defendant asserts at page 8 of its opposition that she should have.

its proffer of the Flamm Letter and advanced a legal argument in that connection with utterly no basis in the law. Moreover, defendant's contention that plaintiff should have provided to it the information contained in the Flamm Letter is a particularly hard sell, given that she could obviously not produce to defendant information that was not true, as that in the Letter is. Quite simply, Flamm's theorizing in the Letter that he met in person with plaintiff during the week of February 19, 2007 is directly contradicted by the fact that, as of that week, plaintiff had already retained her current counsel, as demonstrated by the February 20, 2007 letter her current counsel wrote to defendant announcing its representation of plaintiff and its intention to institute on plaintiff's behalf legal action for sexual harassment (Bernbach Reply Dec., Ex. 4). Needless to say, plaintiff would not be consulting in person with Flamm when she had already retained other counsel.

Continuing this bizarre campaign of role-reversal, defendant claims that because plaintiff allegedly did not produce to it the information in the Flamm Letter the Flamm Declaration should be precluded under Fed. R. Civ. P. 37(c). Even if none of the foregoing showing that plaintiff fully complied with her disclosure obligations were true, this, of course, would still make utterly no sense, as the Flamm Declaration was obtained by plaintiff not to uncover any new information, but merely to serve as corroboration of information already long disclosed, *i.e.* that plaintiff had sought Flamm's counsel in January 2007.

Finally, plainly, defendant's effort to sidestep its obligations under Rule 26 by cloaking itself in the rule's exemption for impeachment evidence is another casualty of its thoroughly discredited argument that the Flamm Letter was in fact impeachment evidence. As confirmed by its own description of the Letter as "extremely useful to New Roc's position and essential to New

Roc's Motion for partial Summary Judgment," the Letter was obtained by defendant to "support its... defenses," Fed. R. Civ. P. 26(a)(1)(B), and thus should have been produced.

### POINT III
### DEFENDANT'S REQUEST FOR LEAVE
### TO DEPOSE FLAMM SHOULD BE DENIED

Although defendant was fully aware of Flamm and his potential relevance to this case during discovery, it opted not to seek to depose him at that time. Now, upon discovering that its effort to surreptitiously gather evidence from Flamm has yielded only the inadmissible fruit that is the Flamm Letter, defendant effectively asks this Court to undo its errors by permitting a deposition of Flamm some two-plus months after discovery, and hence the proper time to conduct such a deposition, concluded. Even worse, defendant requests that the Court permit it to depose Flamm on the substantive – and privileged – content of his consultations with plaintiff. This request is utterly beyond the pale. First, as stated above, defendant is in this position solely because of its own negligence, and it is not the place of the Court to clean up after parties when they fail to properly execute some aspect of their case. More importantly, defendant seeks to invade the attorney-client privilege and reach the protected particulars of Flamm's consultations with plaintiff when it has made an issue herein solely of the timing of those consultations, and hence of nothing having to do with the substance of the consultations. This is underscored by the fact that defendant claims to need to depose Flamm because "there are no records or documents that support either Mr. Flamm's Letter or... Declaration," both of which, of course, focus exclusively upon the timing issue, and on nothing having to do with the substance of plaintiff's consultations with Flamm. Yet, from there, defendant makes the leap to somehow needing access to privileged communications. Quite simply, there is absolutely nothing about what plaintiff and

12

an attorney said to each other in legal consultation that is relevant to this case. Defendant's contention that, "since Plaintiff has a claim of retaliation involving her consultation with Mr. Flamm, it is necessary to depose him regarding the nature of that consultation" is a noxious mix of gross distortion and rank sophistry. Plaintiff has a claim of retaliation because of the protected activity she engaged in while employed with defendant, namely her numerous complaints of sexual harassment to defendant's human resources director, including one that embodied a declaration of her intention to seek legal counsel to redress such harassment, and defendant's having reacted to such complaints by terminating her. The fact of plaintiff's having consulted with Flamm is collateral to the above facts, and the actual substance of what she discussed with Flamm during such consultations is thoroughly immaterial to them. This is extreme overreaching on defendant's part and should be stopped in its tracks by the Court.

     To the extent defendant is seeking information on the timing of the consultations, first of all, as stated above, the substance of the communications between plaintiff and Flamm have no bearing on that. Second, defendant already investigated that matter with Flamm on its own, with the Flamm Letter having been the result. Accordingly, there would be nothing more to be gained by its deposing Flamm so far beyond the proper time to have done so. If defendant's effort in this regard is to transform the information in the inadmissible Flamm Letter into an admissible form, again, it was by its own negligence that it failed to do so – it could have, as plaintiff did, secured from Flamm a sworn declaration, but, again, it neglected to do so – and the Court should not step in at the eleventh hour to excuse its failings.

     Finally, there has been no waiver of the attorney-client privilege. First, as the "privilege belongs solely to the client and may only be waived by him," In re von Bulow, 828 F.2d 94, 100

13

(2d Cir. 1987), defendant's contention that "Mr. Flamm has effectively waived the attorney-client privilege with respect to the subject matter of Plaintiff's consultation with him" is wholly erroneous. Second, even if that were not the case, neither Flamm's Letter nor his Declaration contains a single actual, specific communication between him and plaintiff, and hence nothing that could be viewed as in any way a revelation of privileged matter that might operate to strip the consultations generally of their confidentiality. In re Currency Conversion Fee Antitrust Litig., 2002 U.S. Dist. LEXIS 21196, *9 (S.D.N.Y. Nov. 4, 2002)("The documents do not indicate that... any specific communication... w[as] disclosed. Accordingly, this Court finds that the attorney-client privilege was not waived").

## CONCLUSION

Plaintiff respectfully reiterates her request that her motion be granted in its entirety, and respectfully requests that defendant's application for leave to depose Flamm be denied.

Dated: White Plains, New York
       February 6, 2008

                                              Respectfully submitted,
                                              BERNBACH LAW FIRM PLLC

By:   s/ Jason Bernbach
        Jason Bernbach (JLB-3392)
        Jeffrey M. Bernbach (JMB-5131)
        245 Main Street
        White Plains, New York
        (914) 428-9100
        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Plaintiff's Reply Memorandum of Law in Further Support of Her Motion to Strike, or, in the Alternative, for Leave to Amend Her Opposition to Defendant's Motion for Partial Summary Judgment was served via electronic case filing and U.S. mail on Putney, Twombly, Hall & Hirson LLP, attorneys for defendants, 521 Fifth Avenue, New York, New York 10175, on the 6th day of February 2008.

s/ Jason Bernbach
Jason Bernbach (JLB-3392)